**Shirley HENSLIN, Doing Business As Car Transportation Co., dba Car Transportation Company, Plaintiff–Appellant,**

v.

**ROAASTI TRUCKING INC., a California Corporation, Defendant,**

and

**The Great Atlantic & Pacific Tea Co., a New Jersey Corporation; A.T.B. Packing Co., a California Corporation; Fruit Salad, a Massachusetts Corporation; Wm. Bolthouse Farms, Inc., a Michigan Corporation; Dole Fresh Vegetables, Inc., a California Corporation, The Nunes Co., Inc., a California Corporation; The Great Atlantic & Pacific Tea Co., a New Jersey Corporation, Defendants–Appellees.**

**Shirley HENSLIN, Doing Business As Car Transportation Co., Plaintiff–Appellant,**

v.

**G & G BROKERS COMPANY, a Missouri Corporation, aka G & G Brokers; Commodity Transport, Inc., a Utah Corporation; Kophammer & Kophammer, a California Corporation, Adolph & Ceresia, a Missouri Corporation, Moore Food Distributors, Inc., a Missouri Corporation and Mr. B's Fruit & Produce, a Missouri Corporation, Defendants–Appellees.**

Nos. 93–16469, 93–16891.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 17, 1995.

Decided Nov. 3, 1995.

Joseph T. Bambrick, Jr., West Reading, Pennsylvania, for plaintiff-appellant.

Steven R. Williams, Crowe, Williams, Jordan, Richey & Brodersen, Visalia, California, for The Great Atlantic & Pacific Tea Company, defendant-appellee.

Lee Tarkington Lundrigan, Western Legal Associates, Modesto, California, for A.T.B. Packing Company, defendant-appellee.

Before: Stephen REINHARDT, David R. THOMPSON, and Andrew J. KLEINFELD, Circuit Judges.

KLEINFELD, Circuit Judge:

The question in this case is whether the exemption of agricultural commodities in the ICC statute regulating trucking eliminates federal question jurisdiction over truckers' claims for unpaid shipping bills for agricultural commodities. We conclude that it does.

## I. Facts.

Ms. Henslin owns a trucking company. She hauled onions, canteloupes, carrots, and other produce for defendants. In all cases, the shipper or consignee paid the broker who hired Ms. Henslin, but the broker went out of business and did not pay her. She sued the shippers and consignees. The substantive question was whether they would get stuck paying twice, or she would get stuck hauling their produce and not getting paid. She, the shippers, and the consignees were innocent victims of the brokers' business failures. Ms. Henslin's claims were in various amounts, ranging from about $1,800 to $20,-000, adding up to about $22,000 total. Her jurisdictional basis for being in district court was federal question, not diversity. Her basis for federal question jurisdiction was that the charges were regulated by the ICC.

The district court granted summary judgment against Ms. Henslin's claims for lack of federal question jurisdiction. In one of the appealed cases the opinion was published, at *Henslin v. Roaasti Trucking, Inc.,* 815 F.Supp. 1347 (E.D.Cal.1993). We affirm.

## II. Analysis.

■ We review summary judgment *de novo. Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995).

For many decades, the federal government has regulated commercial trucking. Motor Carrier Act of 1980, H.R. No. 1069, 96th Cong., 2d Sess. 2 (1980), *reprinted in* 1980 U.S.C.C.A.N. 2283, 2284. Generally, rates are regulated, 49 U.S.C. § 10701, discounts to some but not all shippers are prohibited, 49 U.S.C. § 10741, carriers must charge the rates stated in their published tariffs, 49 U.S.C. § 10761, and liability of a shipper or consignor to pay the carrier is a matter of federal law. 49 U.S.C. § 10744. That im-

plies that there is federal question jurisdiction in a lawsuit to collect unpaid freight bills, so the carrier can sue in federal court regardless of whether the $50,000 diversity requirement in 28 U.S.C. § 1332 is met. *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.,* 460 U.S. 533, 103 S.Ct. 1343, 75 L.Ed.2d 260 (1983).

In the Motor Carrier Act of 1980, Congress reduced the extent of regulation of certain kinds of shipping. In particular, Congress clarified the nature of an exemption it had provided for transportation of agricultural commodities. *See* Motor Carrier Act of 1980, H.R. No. 1069, 96th Cong., 2d Sess. 32 (1980), *reprinted in* 1980 U.S.C.C.A.N. 2283, 2314. Some commodities were exempt from regulation, and Congress sought to assure that mixing exempt and regulated commodities in the same truckload would not deprive the exempt commodities of their exemption, or the regulated commodities of their regulation. *Id.* at 2316. Congress was concerned that because courts had construed mixing to affect regulatory status, trucks were being driven across the country partly empty, wasting work and fuel. *Id.*

The ICC has general jurisdiction over transportation by motor carrier, subject to various exemptions. 49 U.S.C. § 10521 et seq. One exemption is for transportation of agricultural commodities:

> (a) The Interstate Commerce Commission does not have jurisdiction under this subchapter over—
>
> . . . .
>
> (6) transportation by motor vehicle of—
>
> . . . .
>
> (B) agricultural and horticultural commodities (other than manufactured products thereof);
>
> \*    \*    \*    \*    \*    \*

49 U.S.C. § 10526(a). Note that this statute exempts "transportation." The old wording was different, exempting the "motor vehicle." The statute prior to the 1980 amendment exempted "a motor vehicle carrying, for compensation, only property and that property consists of— . . . (B) agricultural or horticultural commodities." 49 U.S.C. § 10526(a),

*amended by* P.L. 96–296, § 21(a), 94 Stat. 810 (1980).

■ Ms. Henslin does not dispute that her trucks were carrying agricultural products for the firms she sued. She argues that because her trucking company is a regulated carrier, she can claim federal question jurisdiction, regardless of whether the commodity she carries is exempt. Her theory is that the shipper of agricultural commodities can use an ICC regulated carrier, or else use an unregulated trucker, and take the bad with the good either way. The exemption of unregulated commodities, in her view, is what enables the shipper to use a nonregulated carrier, but it does not eliminate federal jurisdiction where the shipper elects to hire a certificated carrier.

She relies on a 1956 Fourth Circuit case, *Fawley Motor Lines v. Cavalier Poultry Corp.,* 235 F.2d 416 (4th Cir.1956), for the proposition that the exemption is of vehicles engaged in transporting agricultural commodities, not of the rates for the transportation. *Fawley* held that if a truck is used to carry nonexempt property, tariffs must be filed and observed for agricultural commodities carried in the truck.

We do not think the 1980 statute permits the construction Ms. Henslin urges. The statute construed by *Fawley* is no longer in effect. Ms. Henslin carried the canteloupes and other agricultural commodities under the 1980 statute. The pre–1980 exemption was of a "motor vehicle." That permitted the construction that the exemption was only of the motor vehicle, not of the transportation of particular goods. If the truck was nonexempt for some other reason, then the transportation of agricultural commodities was not exempt. Ms. Henslin's argument that because her trucks are regulated, her rate is too, cannot survive the Congressional alteration of the exemption from "motor vehicle" to "transportation."

■ Now that Congress has exempted the "transportation," it does not matter whether the truck is in some respect not exempt. The "transportation" is exempt regardless of whether the truck is exempt. Congress sought to facilitate efficient shipment of agricultural commodities, whether in mixed or

separate loads, trucks used exclusively for agricultural commodities or trucks used for nonexempt as well as exempt shipments. *See* Motor Carrier Act of 1980, H.R. No. 1069, 96th Cong., 2d Sess. 34 (1980), *reprinted in* 1980 U.S.C.C.A.N. 2283, 2316. In a new section added at the same time as the 1980 amendment quoted above, Congress provided that a trucker providing transportation exempt under the agricultural commodities provision "may transport property under such paragraph in the same vehicle and at the same time as" regulated commodities, and the mixed load transportation "shall not affect the unregulated status of such exempt property." 49 U.S.C. § 10528.

Ms. Henslin also argues because she filed a tariff, she was required to charge the rate in her tariff by ICC regulations, so the amount and terms of her charge was a federal question. Her argument is based on the statutory requirement that a carrier charge the amount stated in its tariff, no more, no less:

> *Except* as provided in this subtitle, a carrier providing transportation or service *subject to* the jurisdiction of the Interstate Commerce Commission under chapter 105 of this title shall provide that transportation or service only if the rate for the transportation or service is contained in a tariff that is in effect under this subchapter. *That carrier* may not charge or receive a different compensation for that transportation or service than the rate specified in the tariff. . . .

49 U.S.C. § 10761 (emphasis added).

The first sentence of section 10761 does not apply because transportation of agricultural commodities is exempt. For that reason, Ms. Henslin did not have to file a tariff for shipping the agricultural commodities. The second sentence limits her charges to what her tariff says only if she is a carrier "providing transportation or service *subject to* the jurisdiction" of the ICC. That is because the phrase "that carrier" refers to a carrier covered by the first sentence, one "*required* to file" a tariff. *Maislin Industries, U.S., Inc. v. Primary Steel, Inc.,* 497 U.S. 116, 135–36, 110 S.Ct. 2759, 2771, 111 L.Ed.2d 94 (Scalia, J., concurring). It is

immaterial whether she *did* in fact file a tariff. Because she did not *have to* file a tariff for transporting the agricultural commodities, she was not required by law to charge for the transportation according to her tariff. The phrase "transportation or service subject to the jurisdiction" in § 10761 and "does not have jurisdiction . . . over . . . transportation" in § 10526 denote the same transportation, so because the § 10526 agricultural commodities exemption applies, the § 10761 requirement does not.

*Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.,* 460 U.S. 533, 103 S.Ct. 1343, 75 L.Ed.2d 260 (1983), held that a carrier's claim for the amount stated in "tariffs regulated by the Interstate Commerce Act" *id.* at 534, 103 S.Ct. at 1343, "arose under federal law." *Id.* at 535, 103 S.Ct. at 1344. It has no application to a claim where the carrier was not required to file a tariff for the transportation. In the case at bar, the claim for payment is not based upon "tariffs regulated by the Interstate Commerce Act," *id.* at 534, 103 S.Ct. at 1343, but upon transportation of property over which "[t]he Interstate Commerce Commission does not have jurisdiction." 49 U.S.C. § 10526(a).

### III. Conclusion.

Because the ICC had no jurisdiction over the transportation, and the carrier was not required to file a tariff for it or to charge according to such a tariff, the carrier's claim for payment did not raise a federal question.

AFFIRMED.