[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 24 2000
THOMAS K. KAHN
CLERK

No. 98-5217

D.C. Docket No. 94-2558-CF-EBD

MIRAGE RESORTS, INCORPORATED,
a Nevada Corporation,

Plaintiff-Appellant,

versus

QUIET NACELLE CORP., a
Florida Corporation,

Defendant-Appellee,

SUNTRUST BANKS, INC., STAGE III TECHNOLOGY
VENTURE, LTD., QUIET TECHNOLOGY VENTURE, LTD.,
STATE III TECHNOLOGY VENTURE, LTD.,

Garnishees.

Appeal from the United States District Court

**(March 24, 2000)**

Before TJOFLAT, Circuit Judge, RONEY and FAY, Senior Circuit Judges.

TJOFLAT, Circuit Judge:

In this appeal, the parties ask us to decide whether a senior creditor may trace and recapture funds paid by a bank to a judgment creditor (pursuant to a writ of garnishment) before the senior creditor declared the debtor in default. The district court held that the funds may be traced and recaptured. We hold that the district court lacked jurisdiction to resolve the issue.

I.

On January 1, 1995, Quiet Technology, Inc. ("Quiet Technology") entered into a loan agreement with Quiet Nacelle Corporation ("QNC"). In exchange for lending QNC $5 million, Quiet Technology took a security interest in, among other things, all of QNC's cash, rights under any contract, and accounts (including accounts receivable). Quiet Technology did not perfect its security interest, however, until August 15, 1995, when it filed a Form UCC-1 financing statement

2

with Florida's Secretary of State that covered the collateral listed in the January 1 loan agreement.[1]

On November 27, 1995, in the United States District Court for the Southern District of Florida, Mirage Resorts, Inc. ("Mirage") obtained a $704,657.48 judgment against QNC in a breach of contract action. On August 12, 1996, after QNC failed to satisfy the judgment, Mirage had a writ of garnishment served on SunTrust Bank, Miami, N.A. ("SunTrust") where QNC maintained two accounts. On August 26, before SunTrust's answer to the writ was due to be filed in district court, Quiet Technology learned of the writ and filed a pleading in the garnishment proceeding styled "Emergency Motion to Dissolve Writ of Garnishment or Alternatively to Foreclose its Lien." In this motion, Quiet Technology alleged that it held a perfected security interest, which predated Mirage's judgment lien, in "all of [QNC's] accounts, including bank accounts, notes receivable, accounts receivable, and all other forms of obligations," and it asked the court to dissolve the writ of garnishment (so that it could foreclose the lien created by its security interest in the bank account balances). Alternatively, Quiet Technology asked the

---

[1] At some time prior to the commencement of the garnishment proceedings described in the text infra, the loan was reduced to $1.5 million.

court to enter judgment in its favor foreclosing the lien of its security interest in these bank account balances.

On June 18, 1997, after hearing arguments from counsel, the court entered an "Order" disposing of Quiet Technology's motion and Mirage's writ of garnishment.[2] In its order, the court denied Quiet Technology's motion because Quiet Technology had not declared QNC in default on the January 1, 1995 loan agreement and, therefore, was not entitled, under Article 9 of Florida's Uniform Commercial Code, Fla. Stat. Ann. §§ 679.101 - 679.507 (West 1999) ("UCC"), to foreclose the lien of its security interest.[3] After denying Quiet Technology's motion, the court ordered SunTrust to pay the balance in the bank accounts, $166,328.96, to Mirage.[4] The following declaration accompanied the order:

---

[2] In the interim, the court asked Quiet Technology to replead its motion and include a fuller discussion of the issues involved.

[3] The court did not cite the specific provision(s) of the UCC on which it based its decision. Instead, it cited an Eighth Circuit case, Frierson v. United Farm Agency, Inc., 868 F.2d 302 (8th Cir. 1989), which was based on Missouri's version of the Uniform Commercial Code, as the closest case on point. Although it denied Quiet Technology the relief it was seeking, the court stated that Quiet Technology held a security interest in the balances of the bank accounts, which it had perfected before Mirage obtained its judgment against QNC.

[4] Traditionally, a garnishor, such as Mirage, who prevails on a writ of garnishment obtains a money judgment, not a mandatory injunction ordering a particular party to pay. In this case, for reasons not revealed by the record, the court apparently concluded that Mirage's remedy at law was inadequate and that an injunctive order, enforceable by the court's contempt power, was necessary. The court, however, did not retain jurisdiction to enforce its order.

4

Quiet Technology will retain its security interest even when Mirage takes the funds. Even after Mirage takes the Suntrust [sic] Bank account funds, Quiet Technology may recover money in which it can demonstrate an interest if and when it chooses to exercise collection remedies available under the UCC. But until such time as Quiet Technology acts in good faith to satisfy QNC's default, the Court will not allow it to selectively enforce its interests so as to frustrate the intent of the UCC.

On July 1, 1997 Quiet Technology filed a motion for reconsideration of the June 18 order, contending that the writ of garnishment should be dissolved because (1) the court based its decision on inaccurate facts; (2) Quiet Technology was no longer lending money to QNC, but rather, was treating it as a defaulted debtor; and (3) the court incorrectly relied on a federal court of appeals case, interpreting Missouri's Uniform Commercial Code,[5] to determine that Quiet Technology could not assert its rights under Article 9 of the UCC. The court denied Quiet Technology's motion for reconsideration on August 28, 1997. Neither Quiet Technology nor Mirage appealed that order (and thus the court's June 18 decision).

While it was prosecuting its motion for reconsideration in the district court, Quiet Technology obtained a default judgment against QNC in the Circuit Court of Dade County, Florida, for money QNC owed it. Then, on February 26, 1998, Quiet Technology returned to the district court and filed a motion, styled "Motion

_____

[5] See supra n.3.

5

to Trace and Recapture," in which it asked the court to enter judgment against Mirage for $166,328.96, the sum of money SunTrust had paid Mirage pursuant to the court's June 18 order. Quiet Technology contended that it had a security interest in those funds, which it had perfected before Mirage obtained its judgment against QNC, and that the UCC permitted it to trace and recapture those funds. Noting that Quiet Technology had declared its loan to QNC in default (and had obtained a judgment for the balance due on the loan in state court), the court, on May 28, 1998, "granted" Quiet Technology's motion. The court did not, however, give Quiet Technology a final judgment for $166,328.96; nor did it order Mirage to pay Quiet Technology that amount. Rather, the court effectively left the parties where it found them, except to declare that Quiet Technology was entitled to trace and recapture the funds at issue.[6]

Mirage now appeals the May 28, 1998 order, invoking our jurisdiction under 28 U.S.C. § 1291 (1994). We conclude that we have jurisdiction under that statute, for, like the parties, we treat the district court's May 28, 1998 order as a final judgment granting declaratory relief. We conclude that the district court lacked

---

[6] Neither the parties (nor the court) have explained how Quiet Technology would obtain satisfaction against Mirage on the court's declaration in the event Mirage refused to give it $166,328.96. That is, no one has suggested that, in an attempt to collect the money, Quiet Technology could obtain a writ of execution or a writ of garnishment or invoke the district court's contempt power.

subject matter jurisdiction to entertain Quiet Technology's motion to trace and recapture and, therefore, vacate the district court's order and direct it to dismiss the case without prejudice.

## II.

It is a fundamental principle of law that "[f]ederal courts are courts of limited jurisdiction. They possess only that power authorized by the Constitution and statute." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377, 114 S. Ct. 1673, 1675, 128 L. Ed. 2d 391 (1994); Taylor v. Appleton, 30 F.3d 1365, 1367 (11th Cir. 1994) (stating that federal courts are "empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution or otherwise authorized by Congress."). It follows from this principle of limited jurisdiction that a federal court has an independent obligation to review its authority to hear a case before it proceeds to the merits. See American Fire & Cas. Co. v. Finn, 341 U.S. 6, 18 & n.17, 71 S. Ct. 534, 542 & n.17, 95 L.Ed. 702 (1951); University of S. Ala. v. American Tobacco Co., 168 F.3d 405, 410 (11th Cir. 1999). Thus, even if the litigants do not question the court's jurisdiction, the court must inquire into its jurisdictional basis sua sponte. See University of S. Ala., 168 F.3d at 410. Further, "[a]n appellate federal court

7

must satisfy itself not only of its own jurisdiction, but also of that of the lower courts in a cause under review." Mitchell v. Maurer, 293 U.S. 237, 244, 55 S. Ct. 162, 165, 79 L.Ed. 338 (1934).

In the case at hand, neither the parties nor the district court inquired whether the court had subject matter jurisdiction to entertain Quiet Technology's motion to trace and recapture. The court's June 1997 order was a final order because it resolved all of the claims that had been presented to it. That order denied Quiet Technology's motion to dissolve the writ of garnishment and directed SunTrust to pay the funds in QNC's accounts to Mirage; after that, nothing remained to be resolved. If Quiet Technology believed that the court's decision was erroneous, it could have appealed. It did not; instead, it moved the court to reconsider its decision. When, on August 28, 1997, the court denied its motion, Quiet Technology could have appealed. But, again, it did not. Instead, more than eight months later – long after the district court's jurisdiction over the garnishment action had expired, cf. Fed. R. Civ. P. 59(b), (e); Fed. R. App. P. 4(a)(1)(A) – it filed its "Motion to Trace and Recapture."

Since the court had not retained jurisdiction to entertain Quiet Technology's motion, the only vehicle Quiet Technology could have used to have its tracing motion considered by the court was Federal Rule of Civil Procedure 60(b), which

8

we quote in the margin.[7]  Nothing in the motion, however, indicates that Quiet Technology was proceeding under that rule.  And nothing in the record suggests a possible basis for proceeding under Rule 60(b).  Further, Quiet Technology's motion did not state that it was invoking any of the statutes that give the district courts subject matter jurisdiction, see, e.g., 28 U.S.C. §§ 1331-1332 (1994), nor does the record indicate that sufficient facts exist to bring the case within those statutes.

III.

For the foregoing reasons, we conclude that the district court lacked subject matter jurisdiction to entertain Quiet Technology's motion to trace and recapture. Therefore, on receipt of our mandate, the court shall dismiss without prejudice the controversy the motion presents.

SO ORDERED.

---

[7] Rule 60(b) states, in pertinent part:
> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b) . . . . The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.