**TRANSIT HOMES OF AMERICA, DIVISION OF MORGAN DRIVE AWAY, INC., Plaintiff,**

v.

**HOMES OF LEGEND, INC., Defendant.**

No. CV 01–BU–2035–M.

United States District Court, N.D. Alabama, Middle Division.

Oct. 12, 2001.

Mark P. Williams, Norman, Wood, Kendrick & Turner, Birmingham, AL, for plaintiff.

Gregory S. Ritchey, Richard S. Walker, Ritchey & Ritchey PA, Birmingham, AL, for defendant.

Memorandum Opinion & Order

BUTTRAM, District Judge.

In its amended complaint, Plaintiff Transit Homes of America, Division of Morgan Drive Away, Inc. ("Morgan") seeks to recover unpaid freight charges from Defendant Homes of Legend, Inc. ("HOL"). (Doc. 2). Now before the Court is HOL's motion to dismiss, filed September 7, 2001, which the Court has advised it will treat as a motion for summary judgment, as HOL appended exhibits to its motion. (Doc. 7). HOL filed a brief in support of its motion, and Morgan has filed a brief and evidence in opposition to HOL's motion. On October 9, 2001, HOL filed a motion seeking permission to file a reply to Morgan's opposition (Doc. 16), a reply brief should that motion be granted, as well as a motion to strike certain materials in Morgan's evidentiary submission. (Doc. 17). The Court concludes, however, that it lacks subject matter jurisdiction and that this action is, therefore, due to be DISMISSED, without prejudice to Morgan to refile its claim in the appropriate state court. HOL's pending motions will be deemed MOOT.

## I. BACKGROUND

According to the amended complaint, the relevant facts are these: Morgan is an interstate motor carrier of property engaged in interstate commerce. HOL is a manufacturer of single-section and multi-section manufactured homes. HOL and Morgan entered into a contract, effective July 1, 1997, under which Morgan, as the carrier, agreed, among other things, to transport for HOL, as shipper, certain single-section and multi-section manufactured homes from points of manufacture at or near Boaz, Alabama, to points in the continental United States. Pursuant to the contract, Morgan provided transportation services to HOL during a period of time

including, but not limited to, February 28, 2000 and March 7, 2000. Shortly thereafter, Morgan submitted invoices to HOL reflecting that the total amount due and owing was $162,357.21. On April, 18, 2000, HOL made a partial payment in the amount of $53,903.53. On June 26, 2000, HOL tendered a check to Morgan in the amount of $62,229.45, claiming that same was "full and final payment of all outstanding amounts owed to" Morgan by HOL. Morgan deposited this check "under protest" and demanded that HOL pay what Morgan considered to be the balance still due, $46,224.23. HOL refused, claiming a valid accord and satisfaction. On August 13, 2001, Morgan filed the instant action in this Court, seeking a judgment for $46,224.23, the amount due under its invoice; plus interest, costs, and any other relief the Court might deem just.

## II. DISCUSSION

■ Federal courts are courts of limited jurisdiction; thus, this Court may hear only cases that the Constitution or Congress has authorized. See, *e.g., Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) (citing cases). "It follows from this principle of limited jurisdiction that a federal court has an independent obligation to review its authority to hear a case before it proceeds to the merits." *Mirage Resorts, Inc. v. Quiet Nacelle Corp.,* 206 F.3d 1398, 1400–01 (11th Cir.2000). "Thus, even if the litigants do not question the court's jurisdiction, the court must inquire into its jurisdictional basis *sua sponte." Id.* at 1401.

■ As a threshold matter, the Court recognizes that it does not have diversity jurisdiction since the amount in controversy—$46,224.23—does not meet the $75,000 jurisdictional prerequisite. See 28 U.S.C. § 1332(a). However, in its amended complaint, Morgan asserts that this Court has subject matter jurisdiction pursuant to both 28 U.S.C. § 1337 and 49 U.S.C. § 14101(b)(2). Where a plaintiff has affirmatively sought to recover under federal law, "[d]ismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (quoting *Oneida Indian Nation of N.Y. v. County of Oneida,* 414 U.S. 661, 666, 94 S.Ct. 772, 39 L.Ed.2d 73, (1974)).

Morgan seeks primarily to found jurisdiction upon 28 U.S.C. § 1337, which provides in pertinent part as follows:

(a) The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce and protecting trade and commerce against restraints and monopolies: Provided, however, That the district courts shall have original jurisdiction of an action brought under section 11706 or 14706 of title 49, only if the matter in controversy for each receipt or bill of lading exceeds $10,000, exclusive of interest and costs.

Morgan argues that its action is "brought under 49 U.S.C. § 10101 *et seq.,*" the Interstate Commerce Act ("ICA"). By its own terms, § 1337 provides that jurisdiction will be present with respect to actions arising under at least certain sections of the ICA. However, it is not clear exactly what section of the ICA Morgan conceives its action as arising under.

■ In its brief, Morgan repeatedly references the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706, and emphasizes its applicability in this case. However, by its terms that section pertains only to the liability of

*carriers* for loss or damage under receipts and bills of lading. The purpose of the Carmack Amendment "is to establish uniform federal guidelines designed in part to remove the uncertainty surrounding a carrier's liability when damage occurs to a shipper's interstate shipment." *Hughes v. United Van Lines, Inc.,* 829 F.2d 1407, 1415 (7th Cir.1987). Thus, it expressly gives a federal cause of action against carriers and uniformly establishes the limits of a carrier's liability. See 49 U.S.C. § 14706(d). HOL has not, as Morgan highlights, filed an action seeking to recover under it. However, the Carmack Amendment gives no indication whatsoever that it creates a corresponding remedy for a carrier to sue a shipper for freight charges allegedly due under a contract, which is the nature of Morgan's claim against HOL. Thus, Morgan's claim against HOL cannot be said to arise under the Carmack Amendment for purposes of 28 U.S.C. § 1337. See *Kansas City Terminal Ry. Co. v. Jordon Mfg. Co.,* 750 F.2d 551, 552 (7th Cir.1984); Old *Dominion Freight Line v. Allou Distributors, Inc.,* 86 F.Supp.2d 92, 94 (E.D.N.Y.2000).

■ Nonetheless, Morgan suggests that a court will inevitably be required to interpret the Carmack Amendment during this litigation. Morgan first notes that the Carmack Amendment is the exclusive remedy for a shipper to recover against a carrier for loss or damage. See *Bear MGC Cutlery Co. v. Estes Express Lines, Inc.,* 132 F.Supp.2d 937, 946 (N.D.Ala.2001). Therefore, Morgan argues, the rights and procedures the amendment specifies will dictate whether HOL, as a shipper, could, because of alleged loss or damage, properly effect an offset against amounts otherwise due Morgan and whether HOL might avail itself of the defense of accord and satisfaction. More specifically, Morgan

claims that in order for HOL to recover against it for any loss or damage under the Carmack Amendment, HOL had to comply with the notice-of-loss or damage requirements set forth at 49 C.F.R. § 370.3, which Morgan alleges HOL did not do. Morgan also contends that the Carmack Amendment would apply to preempt the common law defense of accord and satisfaction, which HOL has indicated that it will assert.

■ The problem with this position, as the Court sees it, is that whether a case is one "arising under" federal law for purposes of a jurisdictional statute "must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose." *Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern California,* 463 U.S. 1, 10, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) (quoting *Taylor v. Anderson,* 234 U.S. 74, 75–76, 34 S.Ct. 724, 58 L.Ed. 1218 (1914)). It may be assumed that the Carmack Amendment would bar HOL from raising certain defenses or counterclaims, such as set off or accord and satisfaction.[1] The fact remains, however, that the right Morgan here seeks to vindicate, *i.e.,* to recover unpaid freight charges, cannot be said to spring from the Carmack Amendment. By its instant line of argument, Morgan is, in effect, attempting to base jurisdiction upon an application of federal law to anticipated defenses. This, the Court concludes, Morgan may not do.

Morgan argues, however, that it does, in fact, have a federal right, neigh, a duty, to recover unpaid freight charges from HOL. For support, Morgan points to *Southern*

---

1. The Court expresses no opinion on the validity of Morgan's arguments concerning the

construction and requirements of the Carmack Amendment.

*Pacific Transportation Co. v. Commercial Metals Co.*, 456 U.S. 336, 343, 102 S.Ct. 1815, 72 L.Ed.2d 114 (1982), wherein the Supreme Court noted "that a carrier has not only the right but also the duty to recover its proper charges for services performed." See also 49 U.S.C. § 13707 ("[A] carrier providing transportation or service subject to jurisdiction under this part shall give up possession at the destination of the property transported by it only when payment for the transportation or service is made.") The Court concludes, however, that federal law no longer gives rise to a right or a duty of a carrier to recover unpaid charges from a shipper under the circumstances present in this case.

Although such is not the case today, the trucking industry was for years subject to heavy government regulation. The court in *Munitions Carriers Conference, Inc. v. United States*, 147 F.3d 1027 (D.C.Cir. 1998), presented this abstract:

> Once upon a time the United States banned price competition among interstate motor carriers of freight. See *Howe v. Allied Van Lines, Inc.*, 622 F.2d 1147, 1152–54 (3rd Cir.1980) (describing institution of tariff regime for railroads in 1887 and its extension to motor carriers in 1935). Each carrier was required to file with the late Interstate Commerce Commission a tariff of its prices and conditions of carriage. See 49 U.S.C. § 10762(a)(1) (1994) (repealed 1995). The carrier could not charge a shipper any rate other than the rate in the filed tariff, see 49 U.S.C. § 10761(a) (1994) (repealed 1995), give any shipper "preferential treatment," see § 10735(a)(1), or discriminate "unreasonably" in its charges to similarly situated shippers, see § 10741(b) (1994) (repealed 1995).
>
> . . . .

In 1995 the Congress found that motor carriage had become a "mature, highly competitive industry where competition disciplines rates far better than tariff filing and regulatory intervention," and that rate regulation was no longer necessary except for "[two] specialized categories of trucking operations." S.Rep. No. 104–176, at 10 (1995) (referring to household goods and certain noncontiguous domestic trade, hereinafter collectively "household goods"); see *id.* at 43 (noting that "[f]or the two categories of traffic for which rates would be regulated, new [§ ] 13701(a) would import the basic rate reasonableness requirement"); see also 49 U.S.C. § 13701 (also imposing reasonableness requirement on "through routes," "divisions of joint rates," and rates "made collectively by [any group of] carriers under agreements approved" by the Surface Transportation Board). Therefore, the Congress abolished the ICC and repealed the provisions (1) requiring that a carrier file tariffs for all types of goods it transports; (2) prohibiting discrimination and preferential treatment; (3) prohibiting government requisition of reduced rate transport; and (4) permitting a carrier voluntarily to offer the Government reduced rates.

> The Congress then enacted a new statutory scheme under which a carrier need file tariffs only for the transportation of household goods, as to which preferential treatment is still prohibited. See 49 U.S.C. ch. 137, § 13704(a)(2) (Supp. I 1995).

147 F.3d at 1028–29.

During the period that carriers were required to maintain tariffs on file with the ICC, federal jurisdiction unquestionably was present under 28 U.S.C. § 1337 in cases in which a carrier sought to recover unpaid freight charges from a shipper due

under a filed tariff. See *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, 460 U.S. 533, 103 S.Ct. 1343, 75 L.Ed.2d 260 (1983). This was so, the Supreme Court explained, because " '[t]he Interstate Commerce Act requires carrier to collect and consignee to pay all lawful charges duly prescribed by the tariff in respect of every shipment. Their duty and obligation grow out of and depend upon that act.' " *Id.* at 534, 103 S.Ct. 1343 (quoting *Louisville & Nashville R. v. Rice*, 247 U.S. 201, 202, 38 S.Ct. 429, 62 L.Ed. 1071 (1918)). However, because the Supreme Court's decision in *Thurston* is grounded upon the theory that a carrier's right and duty to seek recovery of unpaid charges depended upon a filed tariff and the requirements of the ICA, that case has no application to a claim for unpaid freight charges where the carrier was not required to file a tariff for the transportation provided. *Henslin v. Roaasti Trucking, Inc.*, 69 F.3d 995, 998 (9th Cir.1995).

■■■ Morgan does not allege anywhere in its complaint that it is seeking to recover amounts due under a filed tariff. Indeed, Morgan concedes that at no time relevant to this action did the ICA require it to file a tariff with the Surface Transportation Board ("STB"), the successor to the ICC. Morgan does not suggest that it has filed a tariff, and even if it had, the tariff would be of no legal effect. See 49 U.S.C. § 13710(a)(4); *Tempel Steel Corp. v. Landstar Inway, Inc.*, 211 F.3d 1029, 1030 (7th Cir.2000). Thus, it is apparent that Morgan's right to recover unpaid freight charges is not founded upon any federally required tariff, so *Thurston Motor Lines* does not aid Morgan.[2] *Henslin, supra.*

Nonetheless, Morgan suggests that even without a tariff, it still has a federally mandated duty under the ICA to recover unpaid freight charges. Morgan cites no authority holding that such is still the case after the demise of the tariff system and the accompanying filed rate doctrine as applied to interstate trucking generally,

**2.** The Court acknowledges that the *result* in one post–1995 ICA amendments case, *Old Dominion Freight Line v. Allou Distributors, Inc.*, 86 F.Supp.2d 92 (E.D.N.Y.2000), could support the notion that federal jurisdiction still exists under 28 U.S.C. § 1337 where a carrier seeks to recover unpaid freight charges from a shipper. In *Old Dominion*, the court was faced with such claims by a carrier, and the shipper asserted that the court lacked jurisdiction specifically because none of the individual bills of lading forming the basis of the carriers claims exceeded $10,000. *Id.* at 93. The shipper maintained that the carrier's claims were brought under 49 U.S.C. § 14706 but failed to meet the jurisdictional amount required for such claims under 28 U.S.C. § 1337. *Id.* The district court rejected this argument, finding that the $10,000 jurisdictional amount was inapplicable because, it reasoned, as has this Court, a carrier's claim for unpaid freight charges simply does not arise under § 14706. *Id.* at 94. The court further concluded that it had jurisdiction over the carrier's claims under § 1337 based upon the Supreme Court's

decision in *Thurston Motor Lines* that federal jurisdiction exists over a carrier's claim alleging a right to recover under a filed tariff. *Id.* at 93–94. However, the issue of whether a federally required tariff underlaid the carrier's claims in *Old Dominion* does not appear to have been raised, although given the date of the decision, it would seem likely that the conduct in the case was subsequent to the effective date of the 1995 amendments to the ICA. If that were so, the carrier's claims may have been based upon a simple contract only, as is the case here. But the *Old Dominion* opinion itself is silent on this point, and the court did not hint whether its analysis might be altered if there were no filed tariff, as is the case here. Given the ambiguity of the *Old Dominion* opinion on whether a filed tariff was actually there involved and that the court did not address the application of *Thurston Motor Lines* in the context of cases where there is no tariff, to the extent *Old Dominion* implicitly holds that jurisdiction still exists under § 1337 where a carrier seeks unpaid freight charges and it cannot rely upon a filed tariff, this Court declines to follow it.

and the Court sees no reason why it should be so. The strict obligation of a carrier to collect its full fee was based upon the policy underlying the tariff system, which was "to achieve uniformity in freight transportation charges, and thereby eliminate the discrimination and favoritism that had plagued the railroad industry in the late 19th century." *Southern Pacific Transp. Co.*, 456 U.S. at 344, 102 S.Ct. 1815. Under that system, carriers had to charge and collect the "filed rate" set forth in their filed tariffs, no more and no less, see *Security Services, Inc. v. K Mart Corp.*, 511 U.S. 431, 435, 114 S.Ct. 1702, 128 L.Ed.2d 433 (1994), so a carrier's failure to recover unpaid charges due under a tariff from one shipper would be the equivalent of showing unlawful discrimination in rates. See generally *Gross Common Carrier, Inc. v. Baxter Healthcare Corp.*, 51 F.3d 703, 706 (7th Cir.1995) ("The [filed rate] doctrine has been the very cornerstone of the anti-discrimination policy that has had such historic importance in the transportation industry.") But because there is no applicable tariff in this action, the filed rate doctrine has no application, and there is no reason that federal law creates an interest or obligation for carriers to collect particular rates from all shippers. Thus, the right of Morgan to recover unpaid charges arises solely out of the terms of its agreed upon contract with HOL. This brings us to Morgan's final jurisdictional argument.

Morgan contends that its contract with HOL was entered into pursuant to 49 U.S.C. § 14101(b)(1) and that this Court has jurisdiction under § 14101(b)(2). Section § 14101(b), provides as follows:

*(b) Contracts with shippers.—*

(1) *In general.*—A carrier providing transportation or service subject to jurisdiction under chapter 135 may enter into a contract with a shipper, other than for the movement of household goods described in section 13102(10)(A), to provide specified services under specified rates and conditions. If the shipper and carrier, in writing, expressly waive any or all rights and remedies under this part for the transportation covered by the contract, the transportation provided under the contract shall not be subject to the waived rights and remedies and may not be subsequently challenged on the ground that it violates the waived rights and remedies. The parties may not waive the provisions governing registration, insurance, or safety fitness.

(2) *Remedy for breach of contract.*— The exclusive remedy for any alleged breach of a contract entered into under this subsection shall be an action in an appropriate State court or United States district court, unless the parties otherwise agree.

█ As Morgan asserts, § 14101(b)(1) authorized it as a motor carrier to enter into its shipping contract with HOL, as there is no question that the transportation was not of "household goods," as defined by statute. It does not necessarily follow from § 14101(b)(1)'s authorization of carriers and shippers to contract, however, that original jurisdiction is created in a federal district court under § 14101(b)(2) where a carrier sues a shipper for unpaid freight charges based upon a simple contract of carriage. The Court is unable to find any cases addressing whether § 14101(b)(2) can be read as a grant of original jurisdiction for purposes of 28 U.S.C. § 1337. However, identical language found in former 49 U.S.C. § 10713(i)(2), which applied to contracts for rail service, was interpreted as reflecting a Congressional intent to *reduce* federal involvement in the transportation industry by providing that matters of contract dispute between shipper and carrier are to

be decided by courts of law rather than by the federal agency charged with enforcing the ICA. *Cleveland–Cliffs Iron Co. v. ICC,* 664 F.2d 568, 592 (6th Cir.1981). Thus, Morgan's suggestion that § 14101(b)(2) should be read to *confer* federal court jurisdiction over what would otherwise be an ordinary contract collection claim seems contrary to the purpose of the statute and the unmistakable recent course of Congress in generally rolling back federal involvement in carrier-shipper relationships. Indeed, when former 49 U.S.C. § 10713(i) was recodified at 49 U.S.C. § 10709(b)(2), it was made express that its language did *not* confer original jurisdiction under 28 U.S.C. § 1331 or § 1337. And while the omission to include similar language upon passage of 49 U.S.C. § 14101(b)(2) could perhaps hint that it should be read otherwise, the Court finds this reed of statutory construction is simply too slender to support the notion that Congress intended this section to be an affirmative grant of original jurisdiction to the federal district courts. Therefore, the Court concludes that it cannot have jurisdiction under § 14101(b)(2).

### III. CONCLUSION

Based on the foregoing, the Court concludes that it lacks subject matter jurisdiction over this action. Therefore, this action is hereby DISMISSED, without prejudice to Morgan to refile its claim in an appropriate state court. Accordingly, all of HOL's pending motions (Doc's 7, 16, & 17) are deemed **MOOT**.