**CENTRAL TRANSPORT INTERNATIONAL,**
Plaintiff,

v.

**STERLING SEATING,**
INC., Defendant.

**No. CIV. 04–40201.**

United States District Court,
E.D. Michigan,
Southern Division.

Feb. 15, 2005.

Hugh A. Woodrow, Beadle, Burket, John L. Burket, Beadle, Burket, (St. Clair Shores), St. Clair Shores, for Central Transport International, Plaintiff.

Debra J. Tucker, The Tucker Firm (Chicago), Chicago, IL, Michael J. Tauscher, Troy, for Sterling Seating, Incorporated, Defendant.

### ORDER OF REMAND

GADOLA, District Judge.

This is an action on account, breach of contract, and quantum meruit arising out of Defendant Sterling Seating, Inc.'s ("Sterling") alleged failure to pay for Plaintiff Central Transport International's ("Central Transport") freight transportation services. According to the complaint, Sterling entered into an agreement on May 20, 2002 for the motor carrier services of Central Transport to be provided on open account. Central Transport alleges that Sterling accepted those services, and that Central Transport has satisfactorily completed performance of those services, yet Sterling so far refuses to tender the full amount due under the contract. According to Central Transport, there is a remaining balance of $46,613.25 still due under the contract.

Central Transport originally filed its complaint in the Circuit Court for the County of Macomb, Michigan. Sterling removed the action to this Court on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1331, and 28 U.S.C. § 1337(a). The latter provides that "[t]he district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies." 28 U.S.C. § 1337(a). Sterling rests its claim of federal question jurisdiction on the following allegation found in Central Transport's complaint:

> Central Transport maintains, pursuant to 49 U.S.C. [§ ] 13710 et seq., a tariff which among other matters provides for delinquent debtors to reimburse Plaintiff for all expenses including attorney fees related to its collection of delinquent amounts and for the assessment of liquidated damages to be added to all accounts delinquent beyond 90 days.

Compl. ¶ 14.

Concerned that the proper jurisdiction was lacking because all of Central Transport's claims arose under state law, the Court ordered Sterling to show cause why this action should not be remanded to state court for lack of subject matter jurisdiction. In Sterling's response to the Court's order to show cause, Sterling asserts that Central Transport's claims to recover for transportation charges necessarily raise a federal question for two reasons: 1) Congress has enacted an extensive federal statutory scheme that expressly forbids state law claims; and 2) Central Transport's claims are for freight charges allegedly due under federal tariffs.

In support of the first proposition, Sterling cites *North American Phillips Corp.*

*v. Emery Air Freight Corp.*, 579 F.2d 229 (2d Cir.1978), which held that "Congress has created a broad, comprehensive scheme covering the interstate shipment of freight, aimed at preventing preferential treatment among shippers and establishing national equality of rates and services. This has occupied the field to the exclusion of state law." *Id.* at 233–34. Sterling next cites a provision of the Interstate Commerce Commission Termination Act ("ICCTA") which provides:

> [A] State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier (other than a carrier affiliated with a direct air carrier covered by section 41713(b)(4)) or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

49 U.S.C. § 14501(c)(1). Sterling contends that this section of the ICCTA expressly forbids state law claims.

For support of the second proposition, that federal question jurisdiction exists because the claims are for freight charges allegedly due under federal tariffs, Sterling cites *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, 460 U.S. 533, 103 S.Ct. 1343, 75 L.Ed.2d 260 (1983). In that case, the Supreme Court found that federal question jurisdiction existed over what the Ninth Circuit had called a "simple contract-collection action," because the carrier's claims were predicated on a tariff regulated by the Interstate Commerce Act. *Id.* at 533–35, 103 S.Ct. 1343.

Sterling's reliance on *North American Phillips* is misplaced. *North American Phillips* involved the claims of a shipper against an air carrier for the loss of goods during interstate transportation. 579 F.2d at 234. There, the Second Circuit, after deciding that Congress intended to occupy the field of interstate freight shipment, decided that the claim for lost goods arose under federal law. *Id.* The conclusion in *North American Phillips*, however, was made before the Supreme Court's guidance on preemption in *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), *see Ben & Jerry's Homemade, Inc. v. KLLM, Inc.*, 58 F.Supp.2d 315, 318 (D.Vt.1999), and before the passage of the ICCTA, which contrary to Sterling's assumptions, was passed in 1995 to advance the *deregulation* of the rail and motor carrier industries. *See Fitzpatrick v. Morgan Southern, Inc.*, 261 F.Supp.2d 978, 982 (W.D.Tenn.2003).

■ The general preemption provision of the ICCTA cited by Sterling, 49 U.S.C. § 14501(c)(1), does not expressly forbid state law claims, as Sterling claims, but rather forbids state and local "law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier." 49 U.S.C. § 14501(c)(1). *See City of Columbus v. Ours Garage & Wrecker Serv.*, 536 U.S. 424, 429, 122 S.Ct. 2226, 153 L.Ed.2d 430 (2002). No part of the section prevents a state law claim on contract by a motor carrier for unpaid shipping charges. Furthermore, the Court is unable to find any support for the idea that Congress intended to create a federal cause of action for such claims in § 14501(c)(1).

■ Sterling's reliance on *Thurston Motor Lines* is similarly misplaced, for as with *North American Phillips*, *Thurston Motor Lines* was decided before Congress deregulated the industry. *Transit Homes of America v. Homes of Legend, Inc.*, 173 F.Supp.2d 1185 (N.D.Ala.2001), involved a similar case in which a motor carrier sought to bring an action for unpaid shipping charges in federal court based on the rationale of *Thurston Motor Lines* and 28

U.S.C. § 1337. The Court finds *Transit Homes'* analysis to be very helpful and will therefore quote its reasoning at length. In finding that a plaintiff carrier's contract claim no longer presented a federal question, the court found:

Although such is not the case today, the trucking industry was for years subject to heavy government regulation. The court in *Munitions Carriers Conference, Inc. v. United States*, 331 U.S.App. D.C. 213, 147 F.3d 1027 (D.C.Cir.1998), presented this abstract:

Once upon a time the United States banned price competition among interstate motor carriers of freight. See *Howe v. Allied Van Lines, Inc.*, 622 F.2d 1147, 1152–54 (3rd Cir.1980) (describing institution of tariff regime for railroads in 1887 and its extension to motor carriers in 1935). Each carrier was required to file with the late Interstate Commerce Commission a tariff of its prices and conditions of carriage. See 49 U.S.C. § 10762(a)(1) (1994) (repealed 1995). The carrier could not charge a shipper any rate other than the rate in the filed tariff, see 49 U.S.C. § 10761(a) (1994) (repealed 1995), give any shipper "preferential treatment," see § 10735(a)(1), or discriminate "unreasonably" in its charges to similarly situated shippers, see § 10741(b) (1994) (repealed 1995).

\* \* \* \* \* \*

In 1995 the Congress found that motor carriage had become a "mature, highly competitive industry where competition disciplines rates far better than tariff filing and regulatory intervention," and that rate regulation was no longer necessary except for "[two] specialized categories of trucking operations." S.Rep. No. 104–176, at 10 (1995) (referring to household goods and certain noncontiguous domestic trade, hereinafter collectively "household goods"); see *id.* at 43 (noting that "for the two categories of traffic for which rates would be regulated, new [§ ] 13701(a) would import the basic rate reasonableness requirement"); see also 49 U.S.C. § 13701 (also imposing reasonableness requirement on "through routes," "divisions of joint rates," and rates "made collectively by [any group of] carriers under agreements approved" by the Surface Transportation Board). Therefore, the Congress abolished the ICC and repealed the provisions (1) requiring that a carrier file tariffs for all types of goods it transports; (2) prohibiting discrimination and preferential treatment; (3) prohibiting government requisition of reduced rate transport; and (4) permitting a carrier voluntarily to offer the Government reduced rates.

The Congress then enacted a new statutory scheme under which a carrier need file tariffs only for the transportation of household goods, as to which preferential treatment is still prohibited. See 49 U.S.C. ch. 137, § 13704(a)(2) (Supp. I 1995).

147 F.3d at 1028–29.

During the period that carriers were required to maintain tariffs on file with the ICC, federal jurisdiction unquestionably was present under 28 U.S.C. § 1337 in cases in which a carrier sought to recover unpaid freight charges from a shipper due under a filed tariff. See *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, 460 U.S. 533, 103 S.Ct. 1343, 75 L.Ed.2d 260 (1983). This was so, the Supreme Court explained, because " 'the Interstate Commerce Act requires carrier to collect and consignee to pay all lawful charges duly prescribed by the tariff in respect of every shipment. Their duty and obligation grow out of and depend upon that act.' " *Id.*

at 534, 103 S.Ct. 1343 (quoting *Louisville & Nashville R. v. Rice*, 247 U.S. 201, 202, 38 S.Ct. 429, 62 L.Ed. 1071 (1918)). However, because the Supreme Court's decision in *Thurston* is grounded upon the theory that a carrier's right and duty to seek recovery of unpaid charges depended upon a filed tariff and the requirements of the ICA, that case has no application to a claim for unpaid freight charges where the carrier was not required to file a tariff for the transportation provided. *Henslin v. Roaasti Trucking, Inc.*, 69 F.3d 995, 998 (9th Cir.1995).

[Plaintiff] does not allege anywhere in its complaint that it is seeking to recover amounts due under a filed tariff. Indeed, [Plaintiff] concedes that at no time relevant to this action did the ICA require it to file a tariff with the Surface Transportation Board ("STB"), the successor to the ICC. [Plaintiff] does not suggest that it has filed a tariff, and even if it had, the tariff would be of no legal effect. See 49 U.S.C. § 13710(a)(4); *Tempel Steel Corp. v. Landstar Inway, Inc.*, 211 F.3d 1029, 1030 (7th Cir.2000). Thus, it is apparent that [Plaintiff]'s right to recover unpaid freight charges is not founded upon any federally required tariff, so *Thurston Motor Lines* does not aid [Plaintiff]. *Henslin, supra.*

*Transit Homes*, 173 F.Supp.2d at 1189–90 (footnote omitted). From *Transit Homes* it follows that actions seeking amounts due under filed tariffs present a federal question, while actions seeking amounts dues under a tariff that is not filed, do not.[1]

As with the plaintiff in *Transit Homes*, Central Transport does not allege that it is seeking amounts due under a filed tariff. Rather, Central Transport alleges that it maintains a tariff "pursuant to 49 U.S.C. [§ ] 13710, et seq." Compl. ¶ 14. Section 13710, however, does not provide for the filing of tariffs. Congress passed § 13710 in order to replace the filing requirement with certain other requirements, such as the requirement that a carrier must provide a written or electronic copy of its rate upon request. 49 U.S.C. § 13710. *See Jackson v. Brook Ledge, Inc.*, 991 F.Supp. 640, 645 (E.D.Ky.1997).

It is a more reasonable explanation that Central Transport alleged that its tariff was pursuant to § 13710 because it wished to establish the validity of its tariff so that it could recover "all expenses including attorney fees related to its collection of delinquent amounts and for the assessment of liquidated damages," as provided by the tariff. Compl. ¶ 14. In other words, Central Transport wished to establish that its tariff was legal. This is evident in Central Transport's earlier allegation that "Central Transport maintains a tariff pursuant to United States Code which comports with all aspects of the United States [C]ode which Defendant either received a copy of or was given access to as required." Compl. ¶ 5. In fact, in its response to the Court's order to show cause, Sterling acknowledges that it does

---

**1.** Sterling also cites *Old Dominion Freight Line v. Allou Distribs., Inc.*, 86 F.Supp.2d 92 (E.D.N.Y.2000) for the principle that federal jurisdiction exists over disputes for unpaid interstate shipping charges. The case can be read to support the notion that even unfiled tariffs present a federal question. The case relies on *Thurston Motor Lines* despite the fact that the date the case was decided places it after Congress's deregulation of the industry. *Id.* at 93. Nevertheless, this Court declines to follow *Old Dominion* for reasons similar to those given by *Transit Homes*, namely, that *Old Dominion* makes no statement as to whether the tariff at issue was filed or whether an unfiled tariff would alter its judgment, given that *Thurston Motor Lines* was decided based on the filing requirement. *Transit Homes*, 173 F.Supp.2d at 1190, n. 2.

not believe that Central Transport filed the tariffs under which the claims arise. Resp. at 8, n. 1. Even if Central Transport were to file its tariffs, the tariffs would be void unless they were for shipment of household goods or for noncontiguous domestic trade, neither of which is alleged. 49 U.S.C. § 13710(a)(4).

 Simply put, there is no federal question in this action because Central Transport has not alleged that it seeking amounts due under a *filed* tariff. Instead, Central Transport's claims arise solely from the contract for motor services made with Sterling. Thus, because this action does not arise "under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies," this Court lacks jurisdiction under 28 U.S.C. § 1337. The Court also lacks jurisdiction under 28 U.S.C. § 1331, because this is state law contract dispute, and § 1332, because this is a contract dispute for less than the jurisdictional amount required for diversity jurisdiction.

**ACCORDINGLY, IT IS HEREBY ORDERED** that this civil action, **no. 04–40201**, is hereby **REMANDED** to the Circuit Court for the County of Macomb, Michigan because this Court lacks subject matter jurisdiction.

**SO ORDERED.**