759 F.2d 809
 Summer MORRIS, a minor, by her guardian, Leo W. RECTOR,
Plaintiff-Appellee,
v.
Ken M. PETERSON, individually, Morris, Laing, Evans, Brock
and Kennedy, Defendants-Appellants.
Robert Dunlap, Attorney for Leo W. Rector, Appellee.
 No. 83-2427.
 United States Court of Appeals,
Tenth Circuit.
 April 17, 1985.
 
 Joseph W. Kennedy, Wichita, Kan. (Joseph J. Hlavacek, Wichita, Kan., with him on brief), of Morris, Laing, Evans, Brock & Kennedy, Chartered, Wichita, Kan., for pro se defendants-appellants.
 Robert Dunlap, Colorado Springs, Colo., pro se.
 Robert Dunlap, Colorado Springs, Colo., for appellee Rector.
 Before LOGAN, BREITENSTEIN and SETH, Circuit Judges.
 BREITENSTEIN, Circuit Judge.
 
 
 1
 This is an appeal from an order of the District Court for the District of Colorado, 573 F.Supp. 341, granting the motion of the appellees, Rector and Dunlap, to vacate a judgment for lack of jurisdiction entered against them by the District Court for the District of Kansas for attorneys' fees and expenses. We reverse.
 
 
 2
 In 1979 Margo Whitaker brought suit on behalf of her minor daughter, Summer Morris, in the United States District Court for the District of Kansas for medical malpractice against a Kansas physician alleging that his negligence had caused Summer to be permanently deaf. Plaintiff's attorneys were Ken Peterson and his law firm, Morris, Laing, Evans, Brock & Kennedy of Wichita, Kansas. After discovery and negotiations a settlement was proposed. By its terms Summer would be paid $700.00 a month until she reached the age of 18 and $3,000.00 a month thereafter for the rest of her life. In addition, a $10,000.00 fund would be established for her necessary expenses. Attorneys' fees of $155,000.00 were provided. Whitaker appeared pleased with the settlement but wanted the approval of Bill Morris, Summer's father. Peterson talked with Morris who said that he wanted $48,000.00 to purchase a house. Peterson replied that under no circumstances could the settlement money be used for his personal benefit. On May 22, 1980, Morris telephoned and told Peterson that he wanted $155,000.00 "up front" and that the attorneys' fees of $155,000.00 were not acceptable. Whitaker then talked with Peterson and made the same request. She subsequently withdrew her approval of the settlement.
 
 
 3
 Fearing that a conflict of interest existed between Summer and her mother, who was living with Morris, the attorneys for the plaintiff, moved the court for the appointment of a guardian ad litem. The court granted the motion and on June 11, 1980 appointed Ralph Baehr, an experienced trial attorney, as Summer's guardian ad litem. On June 26, 1980, the appellee, Rector, was appointed by a Colorado court as conservator of Summer's estate.
 
 
 4
 Summer, who was then four years of age, was attending a Colorado school for the deaf. The costs were borne by the state and she could remain there until she turned 18.
 
 
 5
 Rector appeared at a settlement hearing on June 30, 1980, as conservator of the estate of Summer and as attorney for Margo Whitaker, and protested the settlement. He contended that the settlement could not be made over the objections of the parents and Summer's conservator. Baehr also appeared as guardian ad litem and approved the settlement as "fair and reasonable." Testimony was presented by both sides. On July 28, 1980, the court approved the settlement. R.Vol. II, pp. 75-85. On November 10, 1980, the court denied a motion of Whitaker and Rector for reconsideration of the order approving the settlement and approved the award of $155,000.00 of attorneys' fees and expenses. R.Vol. II, pp. 91-92. No appeal was taken from either order.
 
 
 6
 On June 2, 1981, appellee Dunlap as attorney for appellee Rector filed a suit in the El Paso County Colorado district court against Peterson and his law firm charging legal malpractice in their handling of the Kansas suit brought by Whitaker. Service was obtained in Colorado on appellant Peterson. R.Vol. II, p. 133. The defendants removed the case to the federal district court for the District of Colorado on diversity grounds. R.Vol. II, pp. 124 et seq. The attorneys for the defendants then moved for a change of venue to the United States District Court for the District of Kansas under 28 U.S.C. Sec. 1404(a) on the grounds that the underlying medical malpractice suit was determined by the federal court in Kansas and that the convenience of the witnesses required the transfer. The plaintiff opposed the transfer and a hearing was held by the district court for Colorado on October 23, 1981. App. J-1 to J-31. The court ordered the transfer. No appeal was taken from the order of transfer.
 
 
 7
 After the transfer, the defendants filed a motion for summary judgment. They based their motion on collateral estoppel by reason of the action of the Kansas court in approving the settlement. Rector did not respond to the motion. The motion was granted on July 21, 1982, and Rector and his attorney were ordered to appear on August 10, 1982 and show cause why attorneys' fees should not be assessed against them. R.Vol. II, pp. 32-38. Rector and Dunlap did not respond nor did they appear for the hearing on August 10, 1982.
 
 
 8
 On December 20, 1982, the court ordered that attorneys' fees and expenses be assessed against appellee Rector in his individual capacity and against his attorney Dunlap in the amount of $12,709.19. The court found that Rector must have known of the "utter frivolousness" in filing the legal malpractice action against defendants since defendants by requesting a guardian ad litem and presenting the proposed settlement to the court fulfilled their legal duty to Summer. The court also found that any competent counsel would have known of the frivolousness of the suit and declined to bring it. The court found that Rector and Dunlap had acted in bad faith with the motive of harassing the defendants. Id. at 9-12.
 
 
 9
 On March 28, 1983, defendants filed the certified judgment awarding them fees and costs in the United States District Court for the District of Colorado for enforcement under 28 U.S.C. Sec. 1963. Rector and Dunlap moved to vacate the judgment claiming that under Fed.R.Civ.P. 60(b), the Kansas judgment was void for lack of personal jurisdiction over them. They supported their motion by showing by affidavit that Rector had been in Kansas only in connection with the proposal for settlement of the claim of Summer Morris and that Dunlap had only been in Kansas on unrelated matters.
 
 
 10
 The Colorado district court sustained the motion, holding that under the Kansas long arm statute, K.S.A. Sec. 60-308(b)(1), the Kansas court did not have jurisdiction over Rector and Dunlap. R.Vol. I, p. 45. Peterson and his firm have appealed from this judgment.
 
 
 11
 We agree with the trial court that it, as the court in which the judgment is registered, may grant relief under Rule 60(b). Winfield Associates v. Stonecipher, 10 Cir., 429 F.2d 1087, is not in point. There, after a default judgment entered in Illinois had been registered in Kansas, the plaintiff brought an independent action in Kansas attacking the default judgment.
 
 
 12
 We are convinced that the trial court erred in applying the Kansas long arm statute and in holding that under International Shoe Company v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, Rector and Dunlap did not have sufficient contacts in Kansas to justify the jurisdiction of the Kansas court. The Colorado court has confused jurisdiction and venue. Section 1404(a), 28 U.S.C. reads:
 
 
 13
 "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."
 
 
 14
 In Hoffman v. Blaski, 363 U.S. 335, 342-344, 80 S.Ct. 1084, 1088-1090, 4 L.Ed.2d 1254, the Supreme Court held that the phrase "where an action might have been brought" refers only to those districts and divisions where the plaintiff had a right to bring the suit originally, not those to which the defendant has consented. See also Hayman Cash Register Company v. Sarokin, 3 Cir., 669 F.2d 162, 165. Plaintiff could have brought suit originally in Kansas as it was the place where all defendants resided and where the claim of legal malpractice arose. The Supreme Court has said, Van Dusen v. Barrack, 376 U.S. 612, 623, 84 S.Ct. 805, 812, 11 L.Ed.2d 945:
 
 
 15
 "There is no valid reason for reading the words 'where it might have been brought' to narrow the range of permissible federal forums beyond those permitted by federal venue statutes which, after all, are generalized attempts to promote the same goals of convenience and fairness."
 
 
 16
 A court cannot transfer a suit to a court where personal jurisdiction does not exist over the defendants originally, even if the defendants later consent to suit. Hoffman, supra, 363 U.S. at 342-344, 80 S.Ct. at 1088-1090. See also Shutte v. Armco Steel Corp., 3 Cir., 431 F.2d 22, 24, cert. denied 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808.
 
 
 17
 The Colorado district court focused its opinion on whether the Kansas long arm statute gave the Kansas court personal jurisdiction over Rector and Dunlap and whether they had sufficient contacts in Kansas to satisfy the requirements of due process. It answered both questions negatively. It treats both Rector and Dunlap as defendants. They brought this suit in Colorado and the Colorado court had jurisdiction over them. When the case was transferred to Kansas, the Kansas court succeeded to that jurisdiction. In Leroy v. Great Western United Corp., 443 U.S. 173, 180, 99 S.Ct. 2710, 2714, 61 L.Ed.2d 464, the Supreme Court said:
 
 
 18
 "The question of personal jurisdiction, which goes to the court's power to exercise control over the parties, is typically decided in advance of venue, which is primarily a matter of choosing a convenient forum. [Citation omitted.] On the other hand, neither personal jurisdiction nor venue is fundamentally preliminary in the sense that subject-matter jurisdiction is, for both are personal privileges of the defendant, rather than absolute strictures on the court, and both may be waived by the parties." [Emphasis supplied.]
 
 
 19
 In an affidavit attached to the motion to vacate the Kansas judgment Rector referred to the grant of transfer and said, R.Vol. I, p. 17:
 
 
 20
 "I was thereafter informed by Mr. Dunlap that he had attempted to obtain the services of a Kansas attorney to join him in representing me, but had been unsuccessful. I thereupon sought, and was granted, an order of the El Paso County District Court authorizing abandonment of the claim."
 
 
 21
 The trouble is that the claim was not abandoned. Rector and Dunlap filed no response to the motion for summary judgment and did not appear before the Kansas court. They did not respond to the order of the Kansas court to show cause why attorney fees should be assessed against them and did not appear at the hearing before the Kansas court on August 10, 1982.
 
 
 22
 Rector and Dunlap argue that the Kansas order requiring them to pay attorneys' fees and expenses is wrong because they acted in a representative capacity. To support this claim they rely on Wilshire Oil Company v. Riffe, 10 Cir., 409 F.2d 1277. In Wilshire we ordered a complaint dismissed because the Kansas long-arm statute did not cover the employees when they engaged in activities as agents of the corporation. Wilshire involved the question of the court's jurisdiction over defendant corporate employees and is not applicable here. The question of whether the Kansas court had power to assess attorneys' fees and expenses against Rector and Dunlap personally is a question which should have been raised before the Kansas court. By their failure to respond and appear, they lost their right to question the power of the Kansas court to assess the fees and expenses against them personally.
 
 
 23
 Reversed.