**ON TRACK TRANSPORTATION, INC., Plaintiff,**

v.

**LAKESIDE WAREHOUSE & TRUCKING INC., Defendant.**

**Miscellaneous Action No. 06–158.**

United States District Court, E.D. Pennsylvania.

Aug. 22, 2007.

Patrick J. Wolfe, Jr., Ryan D. Harmon, Zarwin, Baum, DeVito, Kaplan, Schaer & Toddy, PC, Philadelphia, PA, for Plaintiff.

Paul D. Keenan, Keenan, Cohen & Howard, P.C., Chad D. Mountain, Jenkintown, PA, for Defendant.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

## TABLE OF CONTENTS

I. BACKGROUND ................................................. 214

II. THIS COURT'S JURISDICTION ................................... 215
    A. A Court's Lack of Subject Matter Jurisdiction Over a Case Is Proper Grounds for Vacatur Under Rule 60(b)(4) .............................. 215
    B. A Motion Under Rule 60(b)(4) May Be Addressed to a Court in Which the Judgment Is Registered ......................................... 216
    C. A Registering Court Has the Power to Vacate a Default Judgment Entered by a Rendering Court on the Basis that the Rendering Court Lacked Subject Matter Jurisdiction ...................................... 220
    D. This Court Will Consider Lakeside's Rule 60(b)(4) Motion to Vacate the California Court's Default Judgment as Void ........................... 222

III. THE CALIFORNIA COURT'S JURISDICTION ........................ 223
    A. Legal Standard ........................................... 223
    B. The California Court Lacked Subject Matter Jurisdiction to Enter the Default Judgment ........................................... 224

IV. CONCLUSION .................................................. 225

This case presents the apparently previously unaddressed question of whether, after a plaintiff obtains a default judgment against a defendant in one jurisdiction and registers that judgment in another jurisdiction, the defendant is entitled to attack that judgment in the court in which it was registered on the grounds that the court that entered the judgment lacked subject matter jurisdiction over the case.

The court that entered the judgment—here, the United States District Court for the Central District of California—is the "rendering court" (sometimes referred to as the "court of rendition"). The court in which the judgment is registered and sought to be enforced—here, the United States District Court for the Eastern District of Pennsylvania—is the "registering court" (sometimes referred to as the "court of registration").

Here, the Court must first decide whether a registering court is empowered to consider, under Federal Rule of Civil Procedure 60(b), a motion to void a default judgment entered by a rendering court on the basis that the rendering court lacked subject matter jurisdiction. The Court holds that a registering court has such authority and, in this case, should exercise that authority. The Court then examines the underlying question—whether the rendering court had subject matter jurisdiction over the case—and finds that subject matter jurisdiction was absent. As such, the Court will void the rendering court's default judgment.

## I. BACKGROUND

Plaintiff On Track Transportation, Inc., provided trucking and transport services for Defendant Lakeside Warehouse & Trucking Inc. According to On Track, Lakeside never paid On Track for the services provided. So, on June 13, 2005, On Track brought suit against Lakeside in the United States District Court for the Central District of California.

On July 6, 2005, On Track filed a proof of service. Lakeside never made an appearance or filed an answer. On August 26, 2005, at On Track's request, the Clerk for the Central District of California entered a default judgment against Lakeside in the amount of $14,381.08.[1]

Approximately one year later, on August 18, 2006, On Track "registered" the judgment in this Court, the United States District Court for the Eastern District of Pennsylvania. Then, on February 12, 2007, On Track requested a writ of execution and, on March 6, 2007, the United States Marshal executed the writ on Fox Chase Bank, where Lakeside maintains a business account. Finally, on March 9, 2007, Lakeside filed the instant motion, seeking relief from judgment.[2]

## II. THIS COURT'S JURISDICTION

This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1963, which vests jurisdiction in district courts to register final judgments that have been entered in other federal courts. "A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner." *Id.* And Federal Rule of Civil Procedure 60(b) provides that a district court may relieve a party of a final judgment.

Thus, this case turns on three interrelated questions. First, is a court's lack of subject matter jurisdiction a proper basis for a Rule 60(b)(4) motion? Second, may a registering court entertain a Rule 60(b) motion to vacate a judgment, or must a motion under Rule 60(b) be made to the rendering court? Finally, drawing on the answers to the first two questions, may a registering court, under Rule 60(b), vacate the judgment of a render-ing court because the rendering court lacked subject matter jurisdiction?

A. *A Court's Lack of Subject Matter Jurisdiction Over a Case Is Proper Grounds for Vacatur Under Rule 60(b)(4).*

■ Rule 60(b) provides that "[o]n motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order, or proceeding for the following reasons: ... (4) the judgment is void...." Fed.R.Civ.P. 60(b)(4). A judgment entered by a court that lacks subject matter jurisdiction is void. *See Gonzalez v. Crosby,* 545 U.S. 524, 534, 125 S.Ct. 2641, 162 L.Ed.2d 480 (2005) ("Rule [60(b)] preserves parties' opportunity to obtain vacatur of a judgment that is void for lack of subject-matter jurisdiction...."); *Marshall v. Bd. of Educ.,* 575 F.2d 417, 422 (3d Cir.1978) ("A judgment may indeed be void, and therefore subject to relief under [Rule] 60(b)(4), if the court that rendered it lacked jurisdiction of the subject matter...."); 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2862 (2d ed.1995) [hereinafter Wright & Miller] (reporting that, under Rule 60(b)(4), a judgment is void "if the court that rendered it lacked jurisdiction of the subject matter").

In spite of the Rule's permissive "may," the law is settled that a court lacks discretion under clause (4): if jurisdiction was absent, the court *must* vacate the judgment as void. *See Jordon v. Gilligan,* 500 F.2d 701, 704 (6th Cir.1974) ("A void judgment is a legal nullity and a court considering a motion to vacate has no discretion in determining whether it should be set aside."); Wright & Miller § 2862 ("There is no question of discretion on the part of the court when a motion is under Rule 60(b)(4)."). Indeed, "a court deciding a motion brought under Rule

---

1. The total includes principal of $13,766.76; prejudgment interest of $357.83; and costs of $256.49.

   It is unclear why the default judgment was only for $14,381.08, because On Track had stated in its complaint (and attached billing records for support) that the total principal due was $21,579.18.

2. On Track filed a response and Lakeside filed a reply brief, and then, at the Court's direction, both parties filed supplemental briefs. At a hearing on the matter, the Court urged both parties to come to an amicable non-Court resolution, due to the relatively small amount of money at issue (the amount subject to the writ of execution is currently $8500). Both parties remained steadfast in their desire to have the Court issue a ruling.

60(b)(4) 'has no discretion because a judgment is either void or it is not.'" *Fafel v. Dipaola*, 399 F.3d 403, 409–10 (1st Cir.2005) (quoting *Honneus v. Donovan*, 691 F.2d 1, 2 (1st Cir.1982) (per curiam)).

There is no time limit for moving to vacate a judgment as void under Rule 60(b)(4). "[N]o passage of time can transmute a nullity into a binding judgment, and hence there is no time limit for such a motion. It is true that the text of the rule dictates that the motion will be made within 'a reasonable time.' However, ... there are no time limits with regards to a challenge to a void judgment because of its status as a nullity...." *United States v. One Toshiba Color Television*, 213 F.3d 147, 157 (3d Cir.2000) (internal citation omitted); *see also* Wright & Miller § 2866 ("Although Rule 60(b) purports to require all motions under it to be made within 'a reasonable time,' this limitation does not apply to a motion under clause (4) attacking a judgment as void. There is no time limit on a motion of that kind.").

Therefore, Lakeside may, one year after the default judgment was entered, move under Rule 60(b)(4) to vacate it as void for lack of subject matter jurisdiction.

### B. *A Motion Under Rule 60(b)(4) May Be Addressed to a Court in Which the Judgment Is Registered.*

■ Motions under Rule 60(b)(4) usually are, perhaps rightfully so, addressed to the court that entered the judgment. A majority of the Circuits have held, though, that, at least in certain circumstances, a court in which a judgment is registered under § 1963 has the authority to hear a Rule 60(b)(4) motion attacking another court's judgment. (The Third Circuit is silent on the issue.[3])

Five Circuits have held that there are at least some circumstances in which a registering court can hear a Rule 60(b)(4) motion. Only one Circuit, the Seventh, has held otherwise. Of course, whether the registering court *should* hear the motion is a different question, and one that is addressed in Section II.C, *infra.*

The Second, Fifth, and Tenth Circuits have explicitly held that, under Rule 60(b)(4), a registering court may void a rendering court's default judgment if the rendering court was without personal jurisdiction over the defendant. In *Covington Industries, Inc. v. Resintex A.G.*, 629 F.2d 730, 732 (2d Cir.1980), the plaintiff obtained a default judgment against the defendant in the District of Georgia and then registered that judgment in the Eastern District of New York. The defendant moved under Rule 60(b)(4) in the New York court to vacate the Georgia default judgment on the basis that the Georgia court lacked personal jurisdiction. The district court granted the motion and vacated the judgment, and the Second Circuit affirmed. "When, in an enforcement proceeding, the validity of the judgment is questioned on [the ground of lack of jurisdiction], the enforcing court has the inherent power to void the judgment, whether the judgment was issued by a tribunal within the enforcing court's domain or by a court of a foreign jurisdiction, unless inquiry into the matter is barred by the principles of res judicata." *Id.* Although Rule 60(b)(4) motions are usually addressed to the rendering court, because that court is more familiar with the action, when a rendering court enters a *default* judgment, the registering court "seems as qualified [as the rendering court] to determine the jurisdiction of the rendering court, particularly when the latter is a federal court of coordinate authority." *Id.* at 733. The Second Circuit noted that this position was in accord with Professor Moore's view: "since by registering the judgment in a particular forum the creditor seeks to utilize the enforcement machinery of that district court[,] it is not unreasonable to hold that the

---

**3.** In *In re Universal Display & Sign Co.*, 541 F.2d 142 (3d Cir.1976), a bankruptcy trustee in the Northern District of California obtained a default judgment against certain Delaware defendants, who had made a special appearance in the California court to contest personal jurisdiction, but, after losing on their motion to dismiss, failed to otherwise appear or plead. When the trustee registered the judgment in the District of Delaware, the defendants moved under Rule 60(b)(4) to vacate the judgment. The Third Circuit noted that the trustee did not object "to the power of the transferee [or registering] court to entertain a Rule 60(b)(4) motion," and therefore did not have occasion to address the issue. *Id.* at 143 n. 6.

latter court has the power to determine whether relief should be granted the judgment debtor under [Rule] 60(b)." *Id.* at 734 (quoting 7 *Moore's Federal Practice* § 60.28(1), at 391–92 (2d ed.1979)).

In *Harper Macleod Solicitors v. Keaty & Keaty,* 260 F.3d 389, 391 (5th Cir.2001),[4] the plaintiff obtained a default judgment in the Southern District of Texas and then registered that judgment in the Eastern District of Louisiana. The defendant then moved the Louisiana court to vacate the judgment under Rule 60(b)(4), alleging that the judgment was void for lack of personal jurisdiction because service of process had been deficient. The district court granted the motion to vacate, and the Fifth Circuit affirmed, "join[ing] the majority of circuits and hold[ing] that registering courts may use Rule 60(b)(4) to sustain jurisdictional challenges to default judgments issued by another district court." *Id.* at 395. The court's reasoning was as follows:

> Though judicial efficiency and comity among district courts often counsel a registering court to defer ruling on Rule 60(b) motions in favor of the rendering court, such deference is less appropriate when the challenged judgment was issued without the benefit of argument from one party and the basis for the 60(b) challenge is jurisdictional.... [A] court of registration effectively can tell a rendering court not to enforce a *default judgment* when the defaulting defendant never appeared in the court of rendition and had a valid jurisdictional complaint. That one district court may exercise such authority over another is a necessary consequence of the established rule that a defendant may challenge a rendering court's personal jurisdiction in a court in which enforcement of a default judgment is attempted. Such authority also reflects the federal system's disdain for default judgments.

*Id.* (internal citations omitted) (emphasis in original).

In *Morris ex rel. Rector v. Peterson,* 759 F.2d 809 (10th Cir.1985), a legal malpractice action was brought in Colorado state court. The defendants removed the case to the Colorado federal court, on the basis of diversity, and then moved the Colorado federal court to transfer the action to the District of Kansas. Over the plaintiffs' opposition, the motion was granted and the case was transferred to the Kansas court. The defendants then filed a motion for summary judgment, to which the plaintiffs never responded. The Kansas court granted the motion and issued a rule to show cause why attorneys' fees should not be assessed against the plaintiffs. The plaintiffs did not respond to the rule to show cause or appear at the hearing, and the Kansas court assessed attorneys' fees against the plaintiffs. The defendants then registered the certified judgment awarding them fees in the Colorado federal court. Finally, the plaintiffs moved the Colorado federal court to vacate the judgment under Rule 60(b)(4) on the basis that the Kansas court lacked personal jurisdiction over them. The Colorado district court held that it had the authority to hear the Rule 60(b)(4) motion and that the Kansas court lacked personal jurisdiction. Although the Tenth Circuit reversed on the factual question of whether the Kansas court had personal jurisdiction over the plaintiffs, it held, without discussion, that a court in which a judgment is registered may grant relief under Rule 60(b). *Id.* at 811.

The Ninth Circuit has come to the same conclusion as the Second, Fifth, and Tenth (that a registering court has jurisdiction to entertain a Rule 60(b) motion attacking an underlying judgment), although its case was not premised on personal jurisdiction. Rather, in *FDIC v. Aaronian,* 93 F.3d 636 (9th Cir.1996),[5] the defendant was able in the registering court to attack the rendering court's judgment on the basis that the judgment was unconstitutional for lack of due process. The plaintiff had obtained a judg-

---

**4.** The Third Circuit's Judge Aldisert, who was sitting by designation on the Fifth Circuit, sat on the panel that unanimously decided *Harper Macleod.*

**5.** Sixteen years earlier, the Ninth Circuit stated in dicta that a Rule 60(b) motion must be presented to the court that entered the judgment. *First Beverages, Inc. v. Royal Crown Cola Co.,* 612 F.2d 1164 (9th Cir.1980). Obviously, the more recent Ninth Circuit case on point is controlling.

ment in the Eastern District of Pennsylvania based on a contract's *cognovit actionem* clause, which allows a holder of a note to obtain a judgment against the defaulting party without notice to the defaulting party. The defendant took no action in the Pennsylvania court, but, when the plaintiff registered the judgment in the Eastern District of California, the defendant moved under Rule 60(b)(4) to vacate the judgment on the grounds that it was unconstitutional for lack of due process. The Ninth Circuit held that the Rule 60(b) motion was properly before the California court. "A court of registration has jurisdiction to entertain motions challenging the underlying judgment." *Id.* at 639.

The First Circuit supports the view of the Second, Fifth, Ninth, and Tenth Circuits, but only in dicta. In *Indian Head National Bank of Nashua v. Brunelle*, 689 F.2d 245, 249 (1st Cir.1982),[6] the plaintiff obtained a default judgment in the Eastern District of Pennsylvania and then sought to enforce that judgment in the District of New Hampshire. In the New Hampshire court, the defendant moved under Rule 60(b)(1) and (6) to vacate the default judgment on the basis that the default judgment was obtained because of the mistake of counsel (who had entered an appearance but then failed to plead). The New Hampshire court granted the motion, but the First Circuit reversed. It held that Rule 60(b) motions must be addressed to the rendering court: "The advisory committee notes to the 1946 amendment reflect an understanding that Rule 60(b) motion practice would be made in the court rendering judgment." *Id.* at 248.[7] A motion under Rule 60(b) *should* be made to the rendering court, because it is considered " 'a continuation of the litigation.' Rule 60(b) motion practice, then, contemplates an exercise of supervisory

power by the rendering court over the judgment it issued." *Id.* at 249.

However, the First Circuit identified two narrow exceptions to the rule that Rule 60(b) motions must be addressed to the rendering court.[8] The first is when the Rule 60(b) motion is akin to an independent equitable action, which is expressly permitted by the Rule. *See* Fed.R.Civ.P. 60(b) ("This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment. . . ."). Such is not the case here. This case is predicated on § 1963, not equity, and Lakeside has not invoked this Court's equitable powers. The second exception to the general rule is for Rule 60(b)(4) challenges to default judgments on the basis that a rendering court lacked personal jurisdiction over the defendant.

Thus, the First Circuit seems to be in accord with the Second, Fifth, and Tenth: a registering court can, under Rule 60(b)(4), vacate a rendering court's default judgment for lack of personal jurisdiction. This is consistent with the view expressed by Wright & Miller:

> Relief under Rule 60(b) ordinarily is obtained by motion in the court that rendered the judgment. If a judgment obtained in one district has been registered in another district, as provided by Section 1963 of Title 28, it is possible that the court in the district of registration has jurisdiction to hear a Rule 60(b) motion. Indeed, several courts have ruled that it is proper for the registration court to entertain a Rule 60(b) motion when the basis for the motion is that the judgment is void for a lack of jurisdiction. But the rendering court ordinarily will be far more familiar with the case and with the circumstances that are said to provide grounds for relief from the judgment. Accordingly it is appropriate for the court in the district of

6. The Third Circuit's Judge Rosenn, who was sitting by designation on the First Circuit, authored *Indian Head*.

7. The advisory committee notes provide:
   Two types of procedure to obtain relief from judgments are specified in the rules as it is proposed to amend them. One procedure is by motion in the court and in the action in which the judgment was rendered. The other

procedure is by a new or independent action to obtain relief from a judgment, which action may or may not be begun in the court which rendered the judgment.
Fed.R.Civ.P. 60 advisory committee note (1946).

8. Arguably, these "exceptions" are dicta, as there was no allegation that the "mistake of counsel" fit within one of the exceptions.

registration to decline to pass on the motion for relief and to require the moving party to proceed in the court that gave judgment.

Wright & Miller § 2865 (footnotes omitted). Indeed, Professor Moore concurs: "a void judgment may be collaterally attacked ... in *any* subsequent state or federal action in which the judgment becomes relevant." 12 Moore's Federal Practice § 60.44 (emphasis added).

The Seventh Circuit is alone in holding that *only* the rendering court has the power to entertain a Rule 60(b) motion. *Bd. of Trs. v. Elite Erectors, Inc.*, 212 F.3d 1031 (7th Cir.2000).[9] In *Elite Erectors*, the plaintiff obtained a default judgment in the Eastern District of Virginia and then registered the judgment in the Southern District of Indiana. The defendants then moved the Indiana court, under Rule 60(b)(4), to vacate the Virginia judgment on the grounds that the Virginia court lacked personal jurisdiction over them. The Indiana court granted the motion and annulled the Virginia court's judgment. The Seventh Circuit reversed. "Could the Southern District of Indiana tell the Eastern District of Virginia that it may not enforce its own judgment if, for example, [the defendants] should have assets in Virginia? A judgment may be registered in many districts, and it would not make much sense to allow each of these districts to modify the judgment under Rule 60(b), potentially in different ways." *Id.* at 1034 (internal citation omitted). The Seventh Circuit concluded that Rule 60(b) motions *must* be presented to the rendering court. *Id.*

The court did provides two caveats, though. The first is obvious: by reason of the doctrine of collateral estoppel, the registering court cannot disturb any ruling that has been expressly litigated in the rendering court (such as whether the rendering court has subject matter or personal jurisdiction). This caveat is inapplicable to default judgments, which by their very nature mean that the rendering court never expressly made a ruling on jurisdiction. The second caveat is that a registering court can disregard the rendering court's judgment, without formally vacating it, if the registering court were to find that the rendering court lacked jurisdiction.

The Court agrees with the majority of Circuits and finds the Seventh Circuit's position unworkable in practice. The Seventh Circuit does join the majority in holding that a registering court is free to find that the rendering court lacked jurisdiction. However, the Seventh Circuit differs on the remedy: while the other Circuits hold that the registering court can then vacate the judgment as void under Rule 60(b)(4), the Seventh Circuit holds that a registering court lacks this authority. Instead, the Seventh Circuit counsels that a registering court should simply disregard, or refuse to enforce, the judgment. This solution is impracticable. Once the litigants have a "full and fair opportunity" to litigate the jurisdiction issue before the registering court and the court makes a decision, that decision has preclusive effect. *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir.2006). The defendant could then move the rendering court to vacate the judgment on the basis

9. The Seventh Circuit incorrectly states that it is in the majority. *Elite Erectors*, 212 F.3d at 1034. It identifies *Rector* (Tenth Circuit) and *Covington* (Second Circuit) as the "minority view," and states that *Indian Head* (First Circuit), *First Beverages* (Ninth Circuit), and Wright & Miller all support its position.

   While the First Circuit, in *Indian Head*, stated that Rule 60(b) motions *should* be made to the rendering court, it explained that there exist two situations in which a Rule 60(b) motion *may* be made to the registering court. And that passage of *First Beverages* cited by the Seventh Circuit as evidence that the Ninth Circuit is in accord with the Seventh is merely dicta; the Ninth Circuit felt free to ignore *First Beverages* (1980) when it

held in *Aaronian* (1996) that a registering court *could* entertain a Rule 60(b) motion challenging the constitutionality of a rendering court's judgment. Finally, contrary to the Seventh Circuit's representation, Wright & Miller are actually in accord with the majority view. *See* Wright & Miller § 2865 ("If a judgment obtained in one district has been registered in another district, as provided by Section 1963 of Title 28, it is possible that the court in the district of registration has jurisdiction to hear a Rule 60(b) motion. Indeed, several courts have ruled that it is proper for the registration court to entertain a Rule 60(b) motion when the basis for the motion is that the judgment is void for a lack of jurisdiction." (footnote omitted)).

that it lacked jurisdiction, using the decision of the registering court offensively. In other words, the Seventh Circuit's solution leads to more time and expense for litigants and courts, the precise ills that § 1963 was designed to remedy. *See Home Port Rentals, Inc. v. Int'l Yachting Group, Inc.,* 252 F.3d 399, 404 (5th Cir.2001) ("An express reason for Congress's enacting § 1963 was 'to spare creditors and debtors alike both the additional costs and harassment of further litigation ....' " (quoting S.Rep. No. 83–1917 (1954), *reprinted in* 1954 U.S.C.C.A.N. 3142)).

In light of the Seventh Circuit's concern that it would not "make much sense to allow each of these districts to modify the judgment under Rule 60(b)," it seems odd that the court would encourage registering courts to disregard judgments without formally vacating them. This Court believes that such a scheme is more fraught with opportunity for confusion than the majority position that a coordinate district court can vacate another court's judgment.

The Court concludes that the majority view is the more appropriate. While it may be preferable, for certain policy reasons, for a Rule 60(b)(4) motion to be put to the rendering court, a registering court nevertheless has the authority to entertain a Rule 60(b)(4) motion seeking to void a judgment of a rendering court.

Therefore, there are some instances in which a registering court may entertain a Rule 60(b)(4) motion.

C. *A Registering Court Has the Power to Vacate a Default Judgment Entered by a Rendering Court on the Basis that the Rendering Court Lacked Subject Matter Jurisdiction.*

■ The Court has been unable to locate a case in which this question was squarely addressed. In ruling on a court's powers under the registration statute, 28 U.S.C. § 1963, the Court begins, naturally, with the language of the statute:

A judgment in an action for the recovery of money or property entered in any ... district court ... may be registered by filing a certified copy of the judgment in any other district ... when the judgment has become final by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown.... A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.

28 U.S.C. § 1963.

Because the language of the statute provides that a judgment registered in a registering court "shall have the same effect as" a judgment entered by a rendering court, the prevailing view is that a registered judgment provides the equivalent of a "new" judgment in the registering court. *See Stanford v. Utley,* 341 F.2d 265, 268 (8th Cir.1965) (Blackmun, J.) ("We have concluded that § 1963 is more than 'ministerial' and is more than a mere procedural device for the collection of the foreign judgment. We feel that registration provides, so far as enforcement is concerned, the equivalent of a new judgment of the registration court."). Under this view, § 1963 provides the registering court with the same inherent powers to enforce the judgment as possessed by the rendering court. *Condaire,* 286 F.3d at 357. Taken to the next logical step, if the registering court has the same powers as the rendering court to *enforce* the judgment, then it should also possess the same power to *vacate* the judgment under Rule 60(b)(4).

Moreover, Congress's purpose in enacting § 1963 supports the view that Congress intended for a registering court to have the same authority over a judgment as a rendering court does. Congress enacted § 1963 in order to simplify the process (for both litigants and courts) for enforcing judgments. Prior to § 1963 a judgment creditor had to file a new suit in the judicial district in which the judgment debtor had assets and then litigate the new suit and obtain a new judgment. Section 1963 was designed to streamline this process, allowing a judgment creditor to simply "register" the judgment in another judicial district, without having to relitigate it. *Home Port Rentals,* 252 F.3d at 404 (citing S.Rep. No. 83–1917 (1954), *reprinted in* 1954 U.S.C.C.A.N. 3142); *see also*

*Condaire, Inc. v. Allied Piping, Inc.*, 286 F.3d 353, 356 (6th Cir.2002) ("[Section] 1963 intends to provide the benefits of a local judgment on a foreign judgment without the expense of a second lawsuit." (quoting *Hanes Supply Co. v. Valley Evaporating Co.*, 261 F.2d 29, 30 (5th Cir.1958))).

Courts that have addressed the issue of whether registering courts have the power to entertain Rule 60(b) motions have tended not to speak in absolutes. Instead of squarely deciding the question, most courts have simply stated that registering courts *should* defer to rendering courts. *See, e.g., Fuhrman v. Livaditis,* 611 F.2d 203, 205 (7th Cir.1979) ("[W]e do not conclude that a registering court presented with a motion for relief from judgment based on lack of personal jurisdiction must in every instance defer to the court which originally issued the judgment...."); *Indian Head,* 689 F.2d at 249 ("Courts of registration presented with Rule 60(b) motions have themselves shown a marked reluctance to entertain them, generally deferring to the rendering courts."). The two reasons usually provided for this deference are (1) comity among the federal district courts and (2) judicial efficiency, because the rendering court is likely to be more familiar with the case. *Indian Head,* 689 F.2d at 249 (citing *Fuhrman,* 611 F.2d at 205).

The latter reason is not relevant when a defendant makes a Rule 60(b)(4) motion in a registering court on the grounds that a *default* judgment entered by the rendering court is void: in entering a default judgment, the rendering court necessarily is relatively unfamiliar with the merits of the case.

The only other reason asserted for this deference is to promote comity among the federal district courts. There is no issue with respect to one federal district court disturbing another court's *ruling* on the issue of jurisdiction, because, under the principle of collateral estoppel, if the rendering court ruled on the issue of jurisdiction, then the registering court is precluded from examining the merits of that ruling. So the only aspect of comity that is touched upon is a federal district court's interest in seeing its *judgments* enforced (and not vacated by a court of coordinate authority).

This interest, however, must be balanced against the longstanding principle that "[a] defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding." *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 706, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). The defendant is free to challenge the rendering court's judgment in a collateral proceeding; there is no constitutional or statutory requirement that such a collateral proceeding must also be before the rendering court. Indeed, a defendant might have several legitimate reasons for allowing a default judgment to be entered and then contesting the court's jurisdiction:

> The defendant may believe that settlement is possible, may prefer to postpone the expenditure of her time and money until a later date, or may wish to contest jurisdiction in a forum closer to her assets. Since the plaintiff may move for the court to attach these assets, this wait and challenge approach may allow a defendant to appear in a forum closer to home, where the defendant has a more prominent presence and better access to choice legal counsel than she does in the forum of the issuing court.

Ariel Waldman, Comment, *Allocating the Burden of Proof in Rule 60(b)(4) Motions to Vacate a Default Judgment for Lack of Jurisdiction,* 68 U. Chi. L.Rev. 521, 521 (2001). Finally, a litigant is usually entitled to the forum of his choosing, so long as venue is proper. *Van Dusen v. Barrack,* 376 U.S. 612, 633–34, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964).

Perhaps because a defendant is permitted to suffer a default judgment and then collaterally attack the jurisdiction of the rendering court, four Circuits have explicitly allowed defendants to make Rule 60(b)(4) motions to registering courts on the basis that the rendering courts lacked personal jurisdiction. *See Harper,* 260 F.3d at 391; *Morris,* 759 F.2d at 811; *Indian Head,* 689 F.2d at 249; *Covington,* 629 F.2d at 732. But does this rationale also hold true for challenges based on *subject matter* jurisdiction?

Judge (now Justice) Ginsburg would seem to think so:

> A defendant who knows of an action but believes the court lacks jurisdiction over his person or over the *subject matter* generally has an election. He may appear, raise the jurisdictional objection, and ultimately pursue it on direct appeal. If he so elects, he may not renew the jurisdictional objection in a collateral attack. . . .
>
> Alternatively, the defendant may refrain from appearing, thereby exposing himself to the risk of a default judgment. When enforcement of the default judgment is attempted, however, he may assert his jurisdictional objection. If he prevails on the objection, the default judgment will be vacated. If he loses on the jurisdictional issue, on the other hand, his day in court is normally over; as a consequence of deferring the jurisdictional challenge, he ordinarily forfeits his right to defend on the merits.

*Practical Concepts, Inc. v. Republic of Bol.,* 811 F.2d 1543, 1547 (D.C.Cir.1987) (internal citations omitted) (emphasis added). And this view is in accord with the *Restatement (Second) of Judgments:* "When the [defendant] knew about the action but perceived that the court lacked territorial or *subject matter* jurisdiction, he is given a right to ignore the proceeding at his own risk but to suffer no detriment if his assessment proves correct." Restatement (Second) of Judgments § 65 cmt. b (emphasis added).

On the other hand, the rationales underlying the requirements of personal and subject matter jurisdiction are quite different. Subject matter jurisdiction is rooted in the inherent power of the court. Federal district courts are courts of limited jurisdiction; they can hear cases only insofar as granted that power by Congress and Article III of Constitution. *Insurance Corp. of Ireland,* 456 U.S. at 702, 102 S.Ct. 2099. A defendant's challenge to a court's *subject matter* jurisdiction is not personal to that defendant; rather, this type of challenge is designed to alert the court that it does not have the power to decide the case. *Id.* Along this vein, a court's lack of subject matter jurisdiction can be raised by any party (or the court sua

sponte) at any stage of the litigation; even an appellate court can dismiss a case for lack of subject matter jurisdiction. *Id.* Indeed, subject matter jurisdiction cannot be waived. *See id.* ("[N]o action of the parties can confer subject-matter jurisdiction upon a federal court. Thus, the consent of the parties is irrelevant. . . .").

Personal jurisdiction raises different concerns. It is rooted in the Due Process Clause of the Constitution. *Id.* A defendant's due process rights would be violated if a court were to hear a case in which the court did not possess personal jurisdiction over the defendant. But, like other personal constitutional rights, a defendant may waive personal jurisdiction. *Id.* at 703, 102 S.Ct. 2099. In short, while the parties can bring themselves within the jurisdiction of the court (personal jurisdiction), the court must still assure itself that it is constitutionally and statutorily empowered to adjudicate the case (subject matter jurisdiction).

In spite of these differences, though, the power of the registering court to entertain Rule 60(b)(4) challenges should be the same, whether the rendering court's judgment is allegedly void because of a lack of subject matter or personal jurisdiction.

This Court, as the registering court, has the authority to hear Lakeside's Rule 60(b)(4) motion that the California court lacked subject matter jurisdiction over the case and therefore that the default judgment entered by the California court against Lakeside is void.

### D. This Court Will Consider Lakeside's Rule 60(b)(4) Motion to Vacate the California Court's Default Judgment as Void.

■ This Court is aware of the policies generally favoring a rendering court to rule on a Rule 60(b)(4) motion and that this Court has the power to transfer the case to the Central District of California, 28 U.S.C. § 1404, or stay enforcement of the writ of execution until the California court resolves the issue of subject matter jurisdiction. *See United States ex rel. Mosher Steel Co. v. Fluor Corp.,* 436 F.2d 383, 385 (2d Cir.1970) ("[T]he court of registration [has] discretion

in appropriate circumstances to refer the parties to the court which rendered judgment."). However, the efficient administration of justice is furthered by this Court deciding the issue.[10]

Judicial economy weighs in favor of this Court deciding the issue. There is a relatively small amount of money at issue (only $8500 remains subject to the writ of execution). And this Court is arguably more familiar with the case than is the California court, given that the parties have briefed the issues and appeared for oral argument here.

Therefore, the Court will consider the merits of Lakeside's Rule 60(b)(4) motion to vacate the California court's judgment.

## III. THE CALIFORNIA COURT'S JURISDICTION

Now that the Court has decided that is has jurisdiction to decide whether the Rule 60(b)(4) motion should be granted, it must look to the merits of the motion, namely whether the California court had subject matter jurisdiction.

### A. *Legal Standard*

Normally, once a defendant moves to dismiss a case for lack of subject matter or personal jurisdiction, the plaintiff bears the burden of demonstrating that the court indeed has jurisdiction over the subject matter and the defendant. *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n,* 819 F.2d 434, 437 (3d Cir.1987) ("Once a jurisdictional defense has been raised, the plaintiff bears the burden of establishing with reasonable particularity sufficient contacts between the defendant and the forum state to support jurisdiction."); *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977) ("[Under Rule 12(b)(1),] the plaintiff [has] the burden of proof that [subject matter] jurisdiction does in fact exist."). However, Rule 60 is silent, and the caselaw is unclear, on which party bears the burden *after* a judgment has been entered.

The Second and Seventh Circuits have squarely placed the burden on the defendant. *See Burda Media, Inc. v. Viertel,* 417 F.3d 292, 299 (2d Cir.2005); *Bally Export Corp. v. Balicar, Ltd.,* 804 F.2d 398, 401 (7th Cir. 1986) ("If the defendant, after receiving notice, chooses to let the case go to a default judgment, the defendant must then shoulder the burden of proof when the defendant decides to contest jurisdiction in a post-judgment rule 60(b)(4) motion."). As the Second Circuit explained, "placing the burden on the defendant reflects 'the concerns of comity among the district courts of the United States, the interest in resolving disputes in a single judicial proceeding, the interest of the plaintiff in the choice of forum, and the fear of prejudice against a plaintiff who, owing to delay, might in subsequent collateral proceedings no longer have evidence of personal jurisdiction that existed at the time of the underlying suit.'" *Burda,* 417 F.3d at 299 (quoting *Miller v. Jones,* 779 F.Supp. 207, 210–11 (D.Conn.1991)). Moreover, this Court has implied that the burden should remain on the defendant, providing in *Whitehouse v. Rosenbluth Bros.,* 32 F.R.D. 247, 248 (E.D.Pa.1962), that the defendants had sixty days to submit evidence supporting their Rule 60(b) motion that the Florida federal court that had entered a judgment against them never had personal jurisdiction over them.

While no Circuit has held otherwise, several district courts and at least one commentator have advocated leaving the burden on the plaintiff. *See, e.g., Sterling Indus. Corp. v. Tel., Inc.,* 484 F.Supp. 1294, 1296 (W.D.Mich. 1980); *Rockwell Int'l Corp. v. KND Corp.,* 83 F.R.D. 556, 559 n. 1 (N.D.Tex.1979); Waldman, *supra,* 68 U. Chi. L.Rev. at 536 ("Courts should ... requir[e] that plaintiffs in Rule 60(b)(4) motions bear the burden of proving that the court issuing the default judgment had proper personal jurisdiction.").

Of course, these cases all turn on the question of personal jurisdiction, not subject matter jurisdiction. The Supreme Court's jurisprudence strongly suggests that the plaintiff

---

**10.** On Track has not advocated that this Court should transfer the matter to the California court. *See* 28 U.S.C. § 1404(a).

224

retains the burden of demonstrating subject matter jurisdiction. *See McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936) (holding that the party asserting the federal court's jurisdiction "must carry throughout the litigation the burden of showing that he is properly in court").

The Court need not decide this difficult issue at this juncture because, as will become clear from the discussion below, the question of whether the California court had subject matter jurisdiction is a clear one.

The "well-pleaded complaint" rule requires that subject matter jurisdiction be clear from the face of the plaintiff's complaint. *Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 9, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). Thus, for the California federal court to have had subject matter jurisdiction, On Track's complaint must have established that the case "ar[o]se[ ] under" federal law. *Id.* at 10, 103 S.Ct. 2841.

B. *The California Court Lacked Subject Matter Jurisdiction to Enter the Default Judgment.*

■ In its complaint in the California court, On Track stated that subject matter jurisdiction was predicated on 28 U.S.C. § 1337(a), which provides in pertinent part that "[t]he district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies." Notably, jurisdiction was not predicated on § 1331 (presumably because there was no federal question involved) or § 1332 (presumably because the amount in controversy, about $20,000, was far below the statutory threshold of $75,000).

On Track contended in its complaint in California (and also contends here) that this action "aris[es] under an[ ] Act of Congress regulating commerce," specifically the Interstate Commerce Act. Compl. ¶ 6. The complaint refers to "Subtitle IV of Title 49 U.S.C., Part B," which "pertain[s] to the billing and collection of charges for transportation in interstate commerce." *Id.* A check of the United States Code shows that 49 U.S.C., Subtitle IV, Part B is entitled "Motor Carriers, Water Carriers, Brokers, and Freight Forwarders," and encompasses §§ 13101 to 14914.

Beginning in 1935, the United States banned price competition among interstate motor carriers of freight. *Munitions Carriers Conference, Inc. v. United States*, 147 F.3d 1027, 1028 (D.C.Cir.1998) (citing *Howe v. Allied Van Lines, Inc.*, 622 F.2d 1147, 1152–54 (3d Cir.1980)). Each carrier was required to file a tariff of its prices and conditions of carriage with the Interstate Commerce Commission (ICC). *Id.* (citing 49 U.S.C. § 10762(a)(1) (repealed 1995)). Each carrier was bound by its tariff: it could not charge a shipper any rate other than that specified in its tariff. *Id.* (citing 49 U.S.C. § 10761(a) (repealed 1995)).

Prior to the industry's deregulation in 1995, "federal jurisdiction unquestionably was present under 28 U.S.C. § 1337 in cases in which a carrier sought to recover unpaid freight charges from a shipper due under a filed tariff." *Transit Homes of Am. v. Homes of Legend, Inc.*, 173 F.Supp.2d 1185, 1189–90 (N.D.Ala.2001). A carrier was obligated to collect its full fee from each shipper, because "a carrier's failure to recover unpaid charges due under a tariff from one shipper would be the equivalent of showing unlawful discrimination in rates," in violation of the Interstate Commerce Act. *Id.* at 1191. During this period, the carrier's claim was "predicated on the [filed] tariff." *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, 460 U.S. 533, 535, 103 S.Ct. 1343, 75 L.Ed.2d 260 (1983) (per curiam). "The Interstate Commerce Act requires carrier to collect and consignee to pay all lawful charges duly prescribed by the tariff in respect of every shipment. Their duty and obligation grow out of and depend upon that act." *Id.* at 534, 103 S.Ct. 1343 (quoting *Louisville & Nashville R.R. Co. v. Rice*, 247 U.S. 201, 202, 38 S.Ct. 429, 62 L.Ed. 1071 (1918)). *Thurston*, which held that federal jurisdiction was proper under § 1337 for a claim predicated on a tariff filed with the ICC, is thus inapplicable to "a claim where the carrier was not required to file a tariff for the transportation."

*Henslin v. Roaasti Trucking Inc.,* 69 F.3d 995, 998 (9th Cir.1995).

In 1995, Congress deregulated the industry and abolished the ICC. *Munitions Carriers,* 147 F.3d at 1028. Carriers are no longer required to file tariffs for the transportation of most goods. *Id.* (Carriers must still file tariffs for the transportation of household goods. *Id.* (citing 49 U.S.C. § 13704(a)(2)).) Moreover, a tariff filed with the Surface Transportation Board (STB), a successor to the ICC, has no legal effect unless the tariff is for the transportation of household goods. *Transit Homes,* 173 F.Supp.2d at 1190 (citing 49 U.S.C. § 13710(a)(4)).

Therefore, after 1995, an interstate motor carrier of freight seeking to recover amounts due from a shipper can predicate federal jurisdiction under § 1337 only upon a tariff filed with the STB for the transportation of household goods. *Cent. Transp. Int'l v. Sterling Seating, Inc.,* 356 F.Supp.2d 786, 791 (E.D.Mich.2005); *Transit Homes,* 173 F.Supp.2d at 1192. Other than in this narrow situation, a carrier's action to recover amounts due from a shipper is simply a contract action. Indeed, in both *Central Transport* and *Transit Homes,* the courts found that they did not possess subject matter jurisdiction because the plaintiffs were not seeking amounts due under filed tariffs, but rather were seeking to recover for breached contracts. *Central Transport,* 356 F.Supp.2d at 791; *Transit Homes,* 173 F.Supp.2d at 1191.

Here, On Track alleges that it is owed on its contract with Lakeside; conspicuously absent from the complaint is an allegation of a filed tariff or that On Track was transporting household goods.

On Track ignores *Central Transport* and *Transit Homes,* two cases that this Court considers well-reasoned and persuasive, and instead focuses its attention on *Blackburn Truck Lines, Inc. v. Francis,* 723 F.2d 730 (9th Cir.1984), and *Old Dominion Freight Line v. Allou Distributors, Inc.,* 86 F.Supp.2d 92 (E.D.N.Y.2000). On Track is not helped by *Blackburn* for the simple reason that *Blackburn* was decided in 1984, a decade before Congress abolished the ICC and deregulated the trucking industry. Sim-

ilarly, *Old Dominion* is unhelpful because, while it was decided in 2000, *after* Congress's deregulation of the industry, it relied for its holding on *Thurston,* the Supreme Court's *pre*-deregulation case. Moreover, *Old Dominion* made no distinction because actions that sought to recover on a filed tariff (to which § 1337 applies) and those that did not seek to recover on a filed tariff (to which § 1337 is inapplicable). Finally, both *Central Transport* and *Transit Homes* expressly declined to follow *Old Dominion.* 356 F.Supp.2d at 790 n. 1, 173 F.Supp.2d at 1190 n. 2.

Therefore, § 1337 did not provide the California court subject matter jurisdiction over the case.

## IV. CONCLUSION

The District Court for the Central District of California lacked subject matter jurisdiction over On Track's case. Therefore, Lakeside's Rule 60(b)(4) motion to vacate the California court's default judgment as void will be granted.

An appropriate Order follows.

### *ORDER*

**AND NOW,** this **22d** day of **August 2007,** for the reasons stated in the accompanying Memorandum, it is hereby **ORDERED** that Defendant's motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b) is **GRANTED.**

It is further **ORDERED** that the default judgment entered in favor of Plaintiff and against Defendant by the Clerk of the United States District Court for the Central District of California, *On Track Transportation, Inc. v. Lakeside Warehouse & Trucking Inc.,* Civil Action No. 05–4253 (docket number 10, filed August 26, 2005), is **VACATED.**

**AND IT IS SO ORDERED.**